ORIGINAL
FILED

07 DEC -3 PM 3: 44

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1  LAURA M. FRANZE (SBN 250316)
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
2  1700 Pacific Avenue, Suite 4100
   Dallas, Texas 75201
3  Telephone:   214-969-2800
   Facsimile:   214-969-4343
4  E-Mail:      lfranze@akingump.com

5  KALIA C. PETMECKY (SBN 194094)
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
6  2029 Century Park East, Suite 2400
   Los Angeles, California 90067-3012
7  Telephone:   310-229-1000
   Facsimile:   310-229-1001
8  E-Mail:      kpetmecky@akingump.com

9  Attorneys for Defendant
   Eddie Bauer, Inc.

10

11

12                    UNITED STATES DISTRICT COURT

13                 SOUTHERN DISTRICT OF CALIFORNIA

14

15  KRISTAL D. SCHERER, an              Case No. '07 CV 2270 JM (AJB)
    individual, on behalf of herself
16  individually, all others similarly
    situated, and on behalf of the general  **DEFENDANT EDDIE BAUER,**
17  public,                              **INC.'S CERTIFICATE OF**
                                         **SERVICE OF NOTICE TO**
18                  Plaintiffs,          **ADVERSE PARTIES OF**
                                         **REMOVAL OF ACTION**
19          v.
                                         (San Diego Superior Court Case No.
20  EDDIE BAUER, INC., a Delaware        37-2007-00075523-CU-OE-CTL)
    corporation, and DOES 1 through 100,
21  inclusive,

22                  Defendants.

23

24

25

26

27

28
   6172208

   CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTIES OF REMOVAL OF ACTION

1    PLEASE TAKE NOTICE THAT, on December 3, 2007, pursuant to 28 U.S.C.

2  § 1446(d), Defendant Eddie Bauer, Inc., through its attorney of record, served Plaintiff

3  Kristal D. Scherer, through her attorneys of record, with the Notice to the Superior

4  Court and to Adverse Parties of Filing of Removal of Civil Action to the U.S. District

5  Court for Southern District of California ("Notice to Adverse Parties").  Attached hereto

6  as Exhibit "A" is a true and correct copy of the Notice to Adverse Parties and Proof of

7  Service.

8  Dated:  December 3, 2007              AKIN GUMP STRAUSS HAUER & FELD LLP
                                        Laura M. Franze
9                                       Kalia C. Petmecky

10

11                                      By _____
                                              Kalia C. Petmecky
12                                              Attorneys for
                                              Defendant Eddie Bauer, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6172208                                 1

CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTIES OF REMOVAL OF ACTION

**EXHIBIT  A**

1    **AKIN GUMP STRAUSS HAUER & FELD LLP**
     LAURA M. FRANZE (SBN 250316)
2    1700 Pacific Avenue, Suite 4100
     Dallas, Texas 75201
3    Telephone: 214.969.2800
     Facsimile:  214.969.4343
4
     **AKIN GUMP STRAUSS HAUER & FELD LLP**
5    KALIA C. PETMECKY (SBN 194094)
     2029 Century Park East, Suite 2400
6    Los Angeles, California 90067-3012
     Telephone: 310-229-1000
7    Facsimile:  310-229-1001
8    Attorneys for Defendant
     Eddie Bauer, Inc.
9

10                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                         FOR THE COUNTY OF SAN DIEGO

12

13
     KRISTAL D. SCHERER, an individual, on        Case No. 37-2007-00075523-CU-OE-CTL
14   behalf of herself, all others similarly situated,
     and on behalf of the general public,          [Assigned To The Honorable Yuri Hofmann
15                                                  For All Purposes]
                    Plaintiff,
16                                                  **NOTICE TO THE SUPERIOR COURT
          v.                                       AND TO ADVERSE PARTIES OF
17                                                  FILING OF REMOVAL OF CIVIL
                                                    ACTION TO THE U.S. DISTRICT
18   EDDIE BAUER, INC., a Delaware                  COURT FOR THE SOUTHERN
     corporation, and DOES 1 to 100, inclusive,    DISTRICT OF CALIFORNIA**
19
                    Defendants.                     Date Action Filed:     September 20, 2007
20                                                  Date Action Served:    November 2, 2007
21                                                  Date Action Removed:   December 3, 2007

22

23

24

25

26

27

28

6172183

NOTICE TO THE SUPERIOR COURT AND TO ADVERSE PARTIES OF FILING OF REMOVAL OF CIVIL ACTION
TO THE U.S. DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA

1    **TO THE CLERK OF THE ABOVE-REFERENCED COURT AND TO ALL PARTIES**

2    **AND THEIR ATTORNEYS OF RECORD:**

3         PLEASE TAKE NOTICE that on December 3, 2007, defendant Eddie Bauer, Inc., filed a

4    Notice of Removal of the above-entitled action pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453,

5    in the United States District Court for the Southern District of California.  Pursuant to 28 U.S.C.

6    §1446(d), this Court "shall proceed no further unless the case is remanded."  28 U.S.C. §1446(d).  A

7    true and correct copy of the Notice of Removal and Supporting Declarations of Diane Kovacs and

8    Kalia C. Petmecky are attached hereto as Exhibit 1.

9

10   Dated:  December 3, 2007                    **AKIN GUMP STRAUSS HAUER & FELD LLP**

11

12                                              By _____

13                                                   Kalia C. Petmecky
                                                    Attorneys for Defendant
                                                    EDDIE BAUER, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6172183

NOTICE TO THE SUPERIOR COURT AND TO ADVERSE PARTIES OF FILING OF REMOVAL OF CIVIL ACTION
TO THE U.S. DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2029 Century Park East, Suite 2400, Los Angeles, California. On December 3, 2007, I served the foregoing document(s) described as: **NOTICE TO THE SUPERIOR COURT AND TO ADVERSE PARTIES of FILING OF REMOVAL OF CIVIL ACTION TO THE U.S. DISTRICT COURT FOR SOUTHERN DISTRICT OF CALIFORNIA** on the interested party(ies) below, using the following means:

Sheldon A. Ostroff, APC                              *Attorneys for Kristal D. Scherer*
Law Offices of Sheldon A. Ostroff
1441 State Street
San Diego, California 92101
Telephone:    619.544.0881

James C. Kostas, APC                                 *Attorneys for Kristal D. Scherer*
David Huffman, APC
Huffman & Kostas
A Partnership of Professional Corporations
1441 State Street
San Diego, California 92101
Telephone:    619.544.0880

☐ BY PERSONAL SERVICE  I delivered such envelope(s) by hand to the offices of the addressee(s).

☐ BY UNITED STATES MAIL  I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

☒ BY MESSENGER SERVICE  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☐ BY FAX  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the respective fax number(s) of the party(ies) as stated above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission(s), which I printed out, is attached.

☒ (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 3, 2007 at Los Angeles, California.

Irma Edwards
_____          _____
[Print Name of Person Executing Proof]                    [Signature]

6172183

1

PROOF OF SERVICE

LAURA M. FRANZE (SBN 250316)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:    214-969-2800
Facsimile:     214-969-4343
E-Mail:  lfranze@akingump.com
        jsmith@akingump.com

KALIA C. PETMECKY (SBN 194094)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone:    310-229-1000
Facsimile:     310-229-1001
E-Mail: kpetmecky@akingump.com

Attorneys for Defendant Eddie Bauer, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTAL D. SCHERER, an individual, on behalf of herself individually, all others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> EDDIE BAUER, INC., a Delaware corporation, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.  '07 **CV**  2270 JM  (AJB) <br><br> **DEFENDANT EDDIE BAUER, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § § 1332(D)(2), 1441, 1446 AND 1453** <br><br> [Declarations of Diane Kovacs and Kalia C. Petmecky in Support Thereto, Filed Concurrently Herewith] <br><br> (San Diego Superior Court Case No. 37-2007-00075523-CU-OE-CTL) |

6171500

1

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Eddie Bauer, Inc. ("Eddie Bauer" or "the Company") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453. In support thereof, Defendant states as follows:

On or about September 20, 2007, a putative class action was commenced and is currently pending against Eddie Bauer in the Superior Court of California, County of San Diego, as Case No. 37-2007-00075523-CU-OE-CTL, entitled *Kristal D. Scherer, an individual, on behalf of herself, all others similarly situated, and on behalf of the general public, v. Eddie Bauer, Inc., and DOES 1 to 100, inclusive.* On November 2, 2007, Eddie Bauer was served with the complaint. *See* Declaration of Kalia C. Petmecky in Support of Eddie Bauer's Notice of Removal ("Petmecky Decl.") ¶2. Attached as Exhibit A to the Petmecky Declaration is a true copy of the Complaint. *See* Petmecky Decl. ¶3. There have been no further proceedings in this action and no other pleadings have been filed or served upon Plaintiff or Eddie Bauer in this action. *See* Petmecky Decl. ¶4.

Plaintiff Kristal Scherer ("Plaintiff") is a former employee of Eddie Bauer. *See* Complaint ¶20. Plaintiff, on behalf of herself and a purported class of current and former Eddie Bauer employees, asserts claims for (1) alleged violations of California Labor Code §§ 200 *et seq.*, (2) conversion, (3) unjust enrichment, and (4) alleged violations of California Business and professions Code §§ 17200 *et seq. See* Complaint *generally.* The Complaint describes a purported putative class consisting of "all similarly-situated former and current employees of Eddie Bauer who are or were employed by Eddie Bauer in California and who were not paid for personal holidays and/or denied compensation in lieu thereof and/or were unlawfully denied wages pursuant to Eddie Bauer's Incentive Plan." *See id.* ¶24.

6171500

2

1    The Complaint and Summons were first properly served on Eddie Bauer on

2 November 2, 2007. *See* Petmecky Decl. ¶ 2. Eddie Bauer's Notice of Removal is

3 timely because it is filed within thirty (30) days of the date of service. *See* 28 U.S.C. §

4 1446(b); *Commercial Computer Services v. Datapoint Corp.*, 641 F.Supp. 1579, 1581

5 (M.D. LA 1986) (holding that the 30-day removal period is extended where last day

6 following service is Saturday).

7    **Jurisdiction**. The above-described action is a civil action of which this Court has

8 original jurisdiction and thus may be removed pursuant to 28 U.S.C. § 1441(b). Under

9 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action

10 brought in a State court of which the district courts of the United States have original

11 jurisdiction...." Pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2

12 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d), 1453, 1711-1715), federal

13 district courts have original jurisdiction over a class action if (1) it involves 100 or more

14 putative class members, (2) any class member is a citizen of a state different from any

15 defendant, and (3) the aggregated controversy exceeds $5 million (exclusive of costs

16 and interest). *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

17    **Class Size**. If Plaintiff's class allegations are established, the class will exceed

18 100 members. *See* Complaint ¶29; Declaration of Diane Kovacs in Support of Notice of

19 Removal of Action ("Kovacs Dec.") ¶11.

20    **Diversity of Citizenship**. At all relevant times, there has been diversity of

21 citizenship between the parties to the action. Eddie Bauer is informed and believes that

22 Plaintiff Kristal Scherer, at the time this action was commenced, was a citizen and

23 resident of the State of California. *See* Complaint ¶1.

24    Eddie Bauer is *not* a citizen of the State of California. "[A] corporation shall be

25 deemed to be a citizen of any State by which it has been incorporated and of the State

26 where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Eddie Bauer

27 has not been incorporated in California. Rather, at the time this action was commenced,

28 Eddie Bauer was a corporation organized and incorporated under the laws of the State of

1    Delaware. *See* Complaint ¶3.  Nor is California the state in which Eddie Bauer has its

2    principal place of business.  Rather, as shown below, Eddie Bauer's principal place of

3    business is located in Washington.[1]

4        In the Ninth Circuit, the "principal place of business" is determined by a two-part

5    inquiry.  *First,* the Court applies the "place of operations" test to determine in what

6    state, if any, a "substantial predominance" of corporate activity takes place.  *Second,* if

7    the corporation's activities are not predominant in a single state, the Court applies the

8    "nerve center" test to identify the state in which the majority of the corporation's

9    executive and administrative functions are performed.  *See United Computer Systems,*

10   *Inc. v. AT&T Corp.,* 298 F.3d 756, 763 (9th Cir. 2002).

11       The "place of operations" test is determinative "where a corporation conducts

12   'substantially all' of its operations in one state and its headquarters are located in

13   another state." *Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1093 (9th Cir.

14   1990) ("courts generally assign greater importance to the corporate headquarters when

15   no state is clearly the center of corporate activity").  However, the "place of operations"

16   test cannot properly identify a corporation's principal place of business where the

17   corporation has operations spread throughout the country.  *See Breitman v. May Co.*

18   *California,* 37 F.3d 562, 564 (9th Cir. 1994) ("Because no one state contains a substantial

19   predominance of the corporation's business activities, the place of operations test is

20   inappropriate"); *Ho v. Ikon Office Solutions, Inc.,* 143 F. Supp. 2d 1163, 1168 (N.D. Cal.

21   2001) (where national corporation has business activity spread among a substantial

22   number of states, "use of the 'place of operations' test would not reliably identify the

23   one state that should be deemed the center of corporate activity").  To determine

24   whether "substantial predominance" in a particular state exists, courts look to several

25   

26       [1] "[28 U.S.C. § 1332(c)] makes clear that every corporation has one and only one principal place of business." *J.A. Olson Co. v. City of Winona, Miss.,* 818 F.2d 401, 406 (5th Cir. 1987), *citing*

27   S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.C.C.A.N. 3099, 3102 (corporation to be regarded as "citizen of that *one* State in which was located its principal place of business" (emphasis

28   added)).

6171500                                         4

1  factors, including the location of employees, tangible property, production activities,

2  sources of income, and the corporation's executive and administrative functions. *See*

3  *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 500-502 (9th Cir.

4  2001).

5    Eddie Bauer's operations clearly do not substantially predominate in California.

6  Eddie Bauer operates stores and employs individuals in 47 states. *See* Kovacs Decl., ¶3.

7  Indeed, Eddie Bauer only employs less than seven percent of its entire workforce in

8  California. *See* Kovacs Decl. ¶4. By contrast, the highest percentage of Eddie Bauer's

9  workforce, constituting just less than fourteen percent, is employed in Washington state.

10 *See* Kovacs Decl. ¶4.[2]  Further, the Company's executive and administrative operations

11 are centrally managed from Washington, not California. *See* Kovacs Decl. ¶5. From

12 Eddie Bauer's corporate headquarters in Washington, Eddie Bauer makes and

13 implements company-wide operating, financial, employee relations, marketing,

14 development, customer care, accounting, treasury, and legal policy decisions. *See*

15 Kovacs Decl. ¶5. Even the individuals with overall responsibility for the Company's

16 California stores (the Divisional Vice President for the West Region and the Senior Vice

17 President of Stores) reside in Washington. *See* Kovacs Decl. ¶5. Board of Directors

18 meetings also take place in Washington. *See* Kovacs Decl. ¶6. Additionally, the

19 Company's financial records are maintained in Washington. *See* Kovacs Decl. ¶6. For

20 all these reasons, if Eddie Bauer's operations substantially predominate in any one state,

21 that state would be Washington.

22    Where, as here, a corporation's activities are widespread and its operations are

23 conducted in many states, the Court must apply the "nerve center" test to determine the

24 company's principal place of business. *See Engels v. Exel Global Logistics, Inc.*, No. C

25 04-3944 MHP, 2005 WL 850879, *5 (N.D. Cal., April 11, 2005); *Arellano*, 245 F. Supp.

26

27    [2] A defendant may make the requisite showing by setting forth additional facts in declarations

28 of knowledgeable company officials. *See United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d
   756, 763 (9th Cir. 2002).

1  2d at 1106; <u>Ho</u>, 143 F. Supp. 2d at 1165.  Under the "nerve center" test, the principal

2  place of business is the state where the majority of executive and administrative

3  functions are performed.  *See Tosco,* 236 F.3d at 500.  Relevant factors include where

4  executives reside and maintain offices, where administrative and financial offices are

5  located, where directors meet, and where day-to-day control over the company is

6  executed.  *See Unger v. Del E. Webb Corp.,* 233 F. Supp. 713, 716 (N.D. Cal. 1964),

7  *accord State Farm Fire & Casualty Co. v. Byrd,* 710 F. Supp. 1292, 1293 (N.D. Cal.

8  1989).

9          Under the "nerve center" test, Eddie Bauer's principal place of business is

10  indisputably in Washington.  As explained above, the vast majority of the corporation's

11  executive and administrative functions occur in Washington.  *See* Kovacs Decl. ¶7.  For

12  example, the executive officers of Eddie Bauer, including the president, chief financial

13  officer, executive vice-presidents, and general counsel, maintain their offices at Eddie

14  Bauer's headquarters in Bellevue, Washington.  *See* Kovacs Decl. ¶7.  From its

15  headquarters in Washington, the Company manages day-to-day operations company-

16  wide, including determining and implementing policy regarding human resources,

17  marketing, finance, accounting, product distribution, and legal issues.  *See* Kovacs Decl.

18  ¶7.  In addition, as noted above, Eddie Bauer's financial records are maintained in

19  Washington.  *See* Kovacs Decl. ¶6.  In short, because Eddie Bauer's executive and

20  administrative functions clearly are concentrated in Washington, under the "nerve center

21  test," Washington is Eddie Bauer's principal place of business.  *See Tosco,* 236 F.3d at

22  500.

23          **Amount in Controversy**.  Defendant avers, for purposes of this Notice only and

24  without conceding any of Plaintiff's allegations in the Complaint, that if Plaintiff

25

26

27

28

1   prevailed on the claims asserted in this action, the requested monetary recovery would

2   exceed $5 million.[3]

3       Plaintiff alleges, as part of her First Cause of Action, that Eddie Bauer owes

4   penalties for purportedly having failed to pay wages to employees upon the end of their

5   employment, as required by the California Labor Code. *See* Complaint ¶¶ 34-36.

6   Under Section 203, former employees to whom an employer willfully denied wages

7   may recover penalties in the amount of their daily rate for a period of up to thirty days.

8   *See* Cal. Lab. Code § 203.

9       The purported class of former employees who Plaintiff claims are entitled to

10  penalties under Section 203 includes 3,208 individuals who worked as either full-time

11  or part-time employees since October 1, 2003. *See* Kovacs Dec. ¶8. Approximately

12  257 of these individuals were formerly full-time employees. *See* Kovacs Dec. ¶8. As

13  full-time employees, these individuals typically worked eight hours per work day. *See*

14  Kovacs Dec. ¶8. At the time of their termination, these former employees were earning

15  an average of $18.72 per hour. *See* Kovacs Dec. ¶8. Therefore, the average daily rate of

16  pay for a former full-time employee is $149.76. For the average former full-time

17  employee, therefore, a 30-day penalty would amount to $4,492.80. Accordingly, with

18  respect to the 257 or so putative class members who are former full-time employees, the

19  amount of penalties in controversy exceeds $1,154,649.60.

20      Similarly, the putative class of persons allegedly entitled to Section 203 penalties

21  also includes 2,951 individuals who worked as part-time employees since October 1,

22  2003. *See* Kovacs Decl. ¶9. As part-time employees, these individuals worked no less

23  than three hours per work day. *See* Kovacs Decl. ¶9. At the time of their termination,

24  these former employees were earning an average of $8.75 per hour. *See* Kovacs Decl.

25  ¶9. Accordingly, the average daily rate of pay for the former part-time employees is at

26

27      [3] A defendant may make the requisite showing by setting forth additional facts in the notice of

28  removal or by affidavit. *See Lamke v. Sunstate Equipment Co., LLC,* 319 F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).

1    least $26.25. For the average former part-time employee, therefore, a 30-day penalty

2    would exceed $787.50. Accordingly, with respect to the 2,951 or so purported class

3    members who are former part-time employees, the penalties in controversy exceed

4    $2,323,912.50. When the penalties allegedly due former part-time employees are

5    combined with the penalties allegedly due former full-time employees, it is clear that at

6    least $3,478,562.10 is in controversy with respect to Plaintiff's Section 203 claim alone.

7          Moreover, Plaintiff alleges, as part of her First Cause of Action, that Plaintiff

8    suffered a loss of approximately $5,000 in alleged denied commissions purportedly

9    earned pursuant to Eddie Bauer's Incentive Plan. *See* Complaint, ¶23. Assuming that

10   Plaintiff's alleged loss of $5,000 is typical of all Eddie Bauer California full-time

11   employees, which Plaintiff claims that it is (*see* Complaint at ¶¶25-28), the amount in

12   controversy for managers claims only, as plead by Plaintiff, exceeds $1,750,000 (*i.e.,*

13   $5,000 x 350 former and current full-time employees). Moreover, the amount in

14   controversy in connection with Plaintiff's claim for alleged denied commissions, will

15   undoubtedly be higher after adding the alleged denied commissions purportedly earned

16   by the 3,614 part-time California employees.

17         Plaintiff further asserts, as part of her First Cause of Action, that Plaintiff was not

18   paid for all purportedly earned personal holidays, was allegedly required to forfeit 16

19   hours of personal holidays and was denied compensation in lieu thereof the value of

20   which Plaintiff approximates at $403.84. *See* Complaint, ¶ 22. Assuming that

21   Plaintiff's alleged loss of $403.84 is typical of all Eddie Bauer California full-time

22   employees, the amount in controversy as plead by Plaintiff exceeds $141,344 (*i.e.,*

23   $403.84 x 350 former and current full-time employees). Similarly, assuming that each

24   of the part-time employees is alleged to have been required to forfeit one personal

25   holiday the amount in controversy as to part-time employees for this claim may exceed

26

27

28

1  $127,709.92 (*i.e.*, 4 hours[4] x $8.75 x 2,951 former part time employees = $103,285, *plus*,

2  4 hours x $9.21 x 663 current part-time employees = $24,424.92).

3       Based on the above, Plaintiff's combined claims for alleged penalties in the

4  estimated amount of $5,497,616.02, estimated for only a portion of the alleged Labor

5  Code violations in Plaintiff's First Cause of Action, exceeds the $5 million threshold

6  requirement.  This amount does not take into account Plaintiff's other three causes of

7  action.  When Plaintiff's prayer for punitive damages[5] which may be as much as three

8  times the compensatory damages (*see Anthony v. Security Pac. Fin.'l Services, Inc.*, 75

9  F.3d 311, 315 (7th Cir. 1996); *Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008 p.5

10  (C.D. Cal. 2005) *unreported*) and attorneys' fees[6] which carries the potential for six

11  figure fees in class actions (*Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th

12  Cir. 1998); *Yeroushalmi, Id.*) are also taken into consideration the amount in controversy

13  requirement is plainly met.

14       **Venue**.  The United States District Court for the Southern District of California is

15  the judicial district embracing the place where Plaintiff's State Court Action Case No.

16  37-2007-00075523-CU-OE-CTL was filed and is therefore the appropriate Court for

17  removal pursuant to 28 U.S.C. § 1441(a).

18       There are no grounds that would justify this Court in declining to exercise its

19  jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(3) or requiring it to decline to exercise

20  jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(4).

21       ///

---

[4] As evidenced by the relevant excerpts of the Personal Holidays Policy attached as Exhibit "A" to the Kovacs Declaration, part-time employees receive an allocation of 16 hours of personal holidays, representing personal holidays at 4 hours for each day. *See* Exhibit "A" to Kovacs Declaration.

[5] "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

[6] It is well settled that where, as here, a state statute provides for attorneys' fees, those fees may be considered in determining the amount in controversy. *See e.g., Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199 (1933); *Gibson v. Chrysler Corp., supra*, at 941-943.

1    THEREFORE, Defendant Eddie Bauer respectfully requests that the above action

2   now pending against it in the Superior Court of California, County of San Diego, be

3   removed therefrom to this Court.

4   Dated:  December 3, 2007                    AKIN GUMP STRAUSS HAUER &
                                                FELD LLP
5                                               Laura Franze
                                                Kalia C. Petmecky
6

7                                               By

8                                                      Kalia C. Petmecky
                                                Attorneys for Defendant
9                                                   Eddie Bauer, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6171500

1   LAURA M. FRANZE (SBN 250316)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
2   1700 Pacific Avenue, Suite 4100
    Dallas, Texas 75201
3   Telephone:    214-969-2800
    Facsimile:    214-969-4343
4   E-Mail:       lfranze@akingump.com

5   KALIA C. PETMECKY (SBN 194094)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
6   2029 Century Park East, Suite 2400
    Los Angeles, California 90067-3012
7   Telephone:    310-229-1000
    Facsimile:    310-229-1001
8   E-Mail:       kpetmecky@akingump.com

9   Attorneys for Defendant
    Eddie Bauer, Inc.

10

11

12               UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15   KRISTAL D. SCHERER, an              Case No.    '07 **CV** 2270 JM (AJB)
     individual, on behalf of herself
16   individually, all others similarly
     situated, and on behalf of the general **DECLARATION OF KALIA C.**
17   public,                             **PETMECKY IN SUPPORT OF**
                                         **DEFENDANT EDDIE BAUER,**
18               Plaintiffs,             **INC.'S NOTICE OF REMOVAL OF**
                                         **ACTION**
19        v.
                                         (San Diego Superior Court Case No.
20   EDDIE BAUER, INC., a Delaware       37-2007-00075523-CU-OE-CTL)
     corporation, and DOES 1 through 100,
21   inclusive,

22               Defendants.

23

24

25

26

27

28

6172201

DECLARATION OF KALIA C. PETMECKY

1    **DECLARATION OF KALIA C. PETMECKY**

2    I, Kalia C. Petmecky, certify and declare as follows:

3    1.    I am an attorney at law duly licensed to practice in all of the Courts of the
4 State of California.  I am Counsel at the law firm of Akin Gump Strauss Hauer & Feld
5 LLP, counsel of record for defendant Eddie Bauer, Inc.  I have personal knowledge of
6 the facts herein stated, and if called and sworn as a witness, I would and could testify
7 competently thereto under oath.

8    2.    On November 2, 2007, Eddie Bauer was served with the complaint in this
9 action.

10    3.    Attached hereto as Exhibit A is a true and correct copy of the Complaint
11 served on Eddie Bauer in this action.

12    4.    There have been no further proceedings in this action and no other
13 pleadings have been filed or served upon Plaintiff or Eddie Bauer in this action.

14    I declare under penalty of perjury under the laws of the United States that the
15 foregoing is true and correct.

16    Executed on this 3rd day of December, 2007, at Los Angeles, California.

17

18

19    Kalia C. Petmecky

20

21

22

23

24

25

26

27

28

6172201

1

DECLARATION OF KALIA C. PETMECKY

**EXHIBIT A**

1  LAW OFFICES OF SHELDON A. OSTROFF
   Sheldon A. Ostroff, APC (State Bar #108510)
2  1441 State Street
   San Diego, California 92101
3  (619) 544-0881

4  HUFFMAN & KOSTAS
   A Partnership of Professional Corporations
5  James C. Kostas, APC (State Bar # 115948)
   David Huffman, APC (State Bar # 69026)
6  1441 State Street
   San Diego, California 92101
7  (619) 544-0880

8  Attorneys for Plaintiff

9

                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                          FOR THE COUNTY OF SAN DIEGO
11

12  KRISTAL D. SCHERER, an individual, on      )   CASE NO. GIC 831641
    behalf of herself, all others similarly situated,  )   37-2007-00075523-CU-OE-CTL
    and on behalf of the general public;         )
13                                              )   CLASS ACTION COMPLAINT FOR
                                                )   VIOLATION OF CALIFORNIA LABOR
14          Plaintiff,                          )   LAW STATUTES, CONVERSION,
                                                )   UNJUST ENRICHMENT AND UNFAIR
15  v.                                          )   BUSINESS PRACTICES
                                                )
16  EDDIE BAUER, INC., a Delaware corporation, )
    and DOES 1 to 100, inclusive,              )
17                                              )
            Defendants.                         )
18  _____)

19

20         Plaintiff Kristal D. Scherer, an individual, on behalf of herself, all others similarly situated, and on

21  behalf of the general public, hereby complains and alleges on information and belief as follows:

22                                        **PARTIES**

23         1.      Plaintiff, Kristal D. Scherer ("SCHERER"), is an individual domiciled in the State of

24  California, County of San Diego.

25         2.      This action is filed on behalf of Plaintiff SCHERER, individually, on behalf of the general

26  public, and on behalf of all members of the class defined in paragraph 24 below under the provisions of

27  California Code of Civil Procedure Section 382, which provides, *inter alia*, that a class action may be

28  brought when the question is one of common interest to many persons, or when the number of persons is

_____

              CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
                CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-2

1   numerous and it is impracticable to bring them all before the court.  This action is properly filed and

2   maintained as a class action for the reasons set forth below.

3       3.    Defendant Eddie Bauer, Inc. ("EDDIE BAUER")  is a corporation organized and existing

4   pursuant to the laws of the State of Delaware and does business  throughout  the State of California,

5   including San Diego County.

6       4.    DOES 1 to 50, are and at all relevant times hereto were, corporations and/or business entities

7   organized and existing under the laws of and/or qualified to do business in California.  DOES 51 to 100 were

8   individuals who were the agents of and/or employees of the corporate/business entity defendants, and were

9   at all times herein mentioned acting within the course and scope of such agency and employment. EDDIE

10  BAUER is therefore liable for the wrongful acts and omissions of each other defendant.

11      5.    Plaintiff does not know the true names of defendant DOES 1 through 100, and therefore sues

12  them by those fictitious names.  Plaintiff is informed and believe, and on the basis of that information and

13  belief alleges, that each of those defendants was in some manner responsible for the events and happenings

14  alleged in this complaint and for the injuries and damages of Plaintiff SCHERER, all others similarly

15  situated and the general public.

16                            **GENERAL ALLEGATIONS**

17      6.    EDDIE BAUER owns and operates a chain of retail men's and women's clothing stores

18  throughout the state of California, including the County of San Diego.  In addition, EDDIE BAUER sells

19  clothing which is available at its retail locations through its mail order catalogue.

20      7.    At all times relevant hereto, EDDIE BAUER had in effect a written Personal Holidays Policy

21  whereby EDDIE BAUER's full-time employees, as part of their compensation, were provided up to 32 hours

22  of paid "personal holidays" and EDDIE BAUER's part-time employees, as part of their compensation, were

23  provided up to 16 hours of paid "personal holidays" to be used for any reason such as vacation, personal

24  business, religious observances or ethnic holidays.

25      8.    At all times relevant hereto, EDDIE BAUER adopted, implemented and enforced a written

26  Personal Holidays policy which required its employees to forfeit vested personal holidays which were not

27  used by November 26 of the calendar year such personal holidays were earned.

28      9.    At all times relevant hereto, EDDIE BAUER adopted, implemented and enforced a written

---

2

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS  PRACTICES

Exh. A-3

Store Team Incentive Plan and Sales Incentive Program (collectively "Incentive Plan") pursuant to which employees who work at EDDIE BAUER's California retail locations earned additional compensation in the form of an increased hourly wage and/or commission to the extent that the annual dollar value of sales generated at each such location equaled or exceeded the amount set forth in the Incentive Plan.

10.    At all times relevant hereto, the annual dollar value of sales generated at each of EDDIE BAUER's retail locations equaled or exceeded the amount set forth in the Incentive Plan.

11.    At all times relevant hereto, EDDIE BAUER deducted the dollar value of merchandise returned to its retail store locations which were purchased through its mail order catalogue thereby reducing the annual dollar value of sales generated at each of EDDIE BAUER's retail store locations below the amount set forth in the Incentive Plan.

12.    As a result of EDDIE BAUER's policy of reducing the dollar value of sales generated at each retail store by the dollar value of returned catalogue purchases, EDDIE BAUER unlawfully denied its California employees wages due in accordance with California law.

13.    At all times relevant hereto, EDDIE BAUER warranted and represented, expressly and/or impliedly, that its written Personal Holidays policy and Incentive Plan were in compliance with all applicable statutes, rules and/or ordinances.

14.    At all times relevant hereto, SCHERER justifiably relied on EDDIE BAUER's express and/or implied warranties and representations that its written Personal Holidays policy and Incentive Plan were in compliance with all applicable statues, rules and/or ordinances.

15.    At all times relevant hereto, EDDIE BAUER knew, or should have known, that its written Personal Holidays policy and Incentive Plan were not compliant with all applicable statutes, rules and/or ordinances which require the payment of all wages when due.

16.    At all times relevant hereto, EDDIE BAUER concealed the illegality of its written Personal Holidays policy and Incentive Plan which relate to the payment of all wages and/or benefits when due from SCHERER and all other similarly situated employees, past and present.

17.    SCHERER had no knowledge, constructive or actual, prior to on or about July 6, 2007 that she had suffered any harm as a result of EDDIE BAUER's written Personal Holidays policy and Incentive Plan or that such written Personal Holidays policy and Incentive Plan were the unlawful cause of such harm.

3

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-4

18.    The  written Personal Holidays policy and Incentive Plan adopted, implemented and/or enforced by EDDIE BAUER are unlawful and violative of California Labor Code Section 200, *et seq.* which requires, *inter alia*, EDDIE BAUER to pay its employees all wages due to its employee.  By virtue of EDDIE BAUER's unlawful written Personal Holidays policy and Incentive Plan, EDDIE BAUER has withheld and is withholding wages owed to its employees pursuant to these laws.

19.    The statute of limitations on the claims asserted herein are equitably tolled as a result of EDDIE BAUER's unlawful written Personal Holidays policy and Incentive Plan, EDDIE BAUER's representations that its written Personal Holidays policy and Incentive Plan were lawful, EDDIE BAUER's concealment of the unlawful nature of its written Personal Holidays policy and Incentive Plan, and/or SCHERER's inability to discover the harm suffered and its wrongful cause as a result of EDDIE BAUER's unlawful written Personal Holidays policy and Incentive Plan.

20.    SCHERER is a former employee of EDDIE BAUER and worked for EDDIE BAUER on a full-time basis from October 31, 2005 to in or about June 2007.

21.    At all times during the tenure of SCHERER's employment with EDDIE BAUER, SCHERER earned vested personal holidays pursuant to EDDIE BAUER's written Personal Holidays policy and commission pursuant to its written Incentive Plan.

22.    As a result of EDDIE BAUER's unlawful conduct as more particularly described herein SCHERER was not paid for all earned personal holidays, SCHERER was required to forfeit 16 hours of personal holidays, and was denied compensation in lieu thereof the value of which is approximately $403.84.

23.    As a result of EDDIE BAUER's unlawful conduct as more particularly described herein SCHERER was denied commissions earned pursuant to the Incentive Plan in the approximate amount of $5,000.00.

### THE CLASS

24.    The class in this case includes all similarly-situated former and current employees of EDDIE BAUER who are or were employed by EDDIE BAUER in California and who were not paid for personal holidays and/or were denied compensation in lieu thereof and/or were unlawfully denied wages pursuant to EDDIE BAUER's Incentive Plan.

25.    The claims of the representative are typical of the claims of the members of the class.

4

Exh. A-5

26.     The representative will fairly and adequately protect the interests of the class and has retained counsel competent and experienced in class action litigation.

27.     The identification of the individual class members may be effectuated by reference to EDDIE BAUER's records. The total amount of wages forfeited or denied the class members by EDDIE BAUER during the class period is also readily ascertainable from EDDIE BAUER's records.

28.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Since the practices EDDIE BAUER engaged in are common to all members of the class, judicial economy is not served by multiple actions with duplicative and repetitive testimony.

29.     The class of persons for whose benefit this case is brought consists of thousands of individuals whose claims, except as to amount of damages, are otherwise identical in that each class member was injured in the same way as a result of EDDIE BAUER's common course of conduct. The amount of uncompensated personal holidays forfeited by each class member and/or the amount of compensation in lieu thereof denied each class member by EDDIE BAUER as well as the amount of compensation denied each class member as a result of EDDIE BAUER's Incentive Plan can be calculated by reference to EDDIE BAUER's records. Therefore, the repetitive testimony of each class member at trial would be impracticable, unnecessary, and an inefficient use of judicial resources.

30.     Although the common questions involved in this class action collectively involve a large sum of money, it would be extremely difficult for an individual class member to economically maintain an individual action on his or her own behalf alone because of the modest amounts at issue in a given transaction.

31.     This class action is proper because of the numerosity of the individuals who have forfeited vested personal holidays, were denied compensation in lieu thereof and/or were not compensated for personal holidays and/or were denied compensation as a result of EDDIE BAUER's Incentive Plan. A multitude of individual actions would work a hardship on the court system and would be impracticable to coordinate by any other means than a class action.

32.     Plaintiff is aware of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

///

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-6

## FIRST CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA LABOR CODE SECTION 200, ET SEQ.)

33.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 32 of the Complaint as though fully set forth herein.

34.    EDDIE BAUER has violated and continues to violate California Labor Code section 201, which provides in pertinent part as follows:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

35.    EDDIE BAUER has violated and continues to violate California Labor Code section 202, which provides in pertinent part as follows:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

36.    EDDIE BAUER is liable for waiting time penalties pursuant to Labor Code section 203, which provides as follows:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days...Suit may be filed for such penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

37.    EDDIE BAUER has violated and continues to violate California Labor Code §204 which requires EDDIE BAUER to, *inter alia,* pay its employees for accrued and vested personal holidays taken in the calendar month in which each employee takes his or her accrued and vested personal holidays or, in any event, not later than the time specified in this section because such personal holidays, or some portion thereof, have been forfeited and such personal holidays can no longer be taken by its employees and such employees shall never receive any compensation for such forfeited personal holidays.

/ / /

/ / /

/ / /

6

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES, CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-7

38.    California Labor Code section 218 gives employees the right to file suit directly in a court of law, rather than going through the Labor Commissioner, as follows:

> Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article.

39.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action pursuant to California Labor Code section 218.5, which provides in pertinent part as follows:

> In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.

40.    EDDIE BAUER is liable for interest on all wages due and unpaid pursuant to Labor Code section 218.6 which provides as follows:

> In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2.

41.    EDDIE BAUER has violated and continues to violate California Labor Code section 221 which provides as follows:

> It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.

42.    EDDIE BAUER has violated and continues to violate California Labor Code section 222 which provides as follows:

> It shall be unlawful in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon.

43.    California Labor Code section 227.3 which gives employees the right to be paid for vested personal holidays upon termination, provides in pertinent part as follows:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

7

Exh. A-8

## SECOND CAUSE OF ACTION

### (CONVERSION)

44.     Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45.   EDDIE BAUER, through the implementation and enforcement of its Personal Holidays policy, requiring employees to annually forfeit all unused personal holidays and/or failing to compensate its employees for personal holidays taken, has converted to its own benefit and use wages of SCHERER and each other member of the class.   Furthermore, EDDIE BAUER, through the implementation and enforcement of its Incentive Plan, as more fully described hereinabove, has converted to its own benefit and use wages of SCHERER and each other member of the class.

46.     The value of the wages converted by EDDIE BAUER is a specific sum as to SCHERER and each other class member and the specific sum for SCHERER and each other class member is capable of identification and quantification from an examination of the records maintained by EDDIE BAUER.

47.     EDDIE BAUER's knowing violations of the law and willful conversion of the wages of SCHERER and the other members of the class for the profit of EDDIE BAUER was despicable conduct in that SCHERER and other members of the class, as employees, reposed the highest trust and regard in EDDIE BAUER and its warranties and representations but notwithstanding such trust and regard, EDDIE BAUER subjected SCHERER and the other members of the class to a cruel and unjust hardship in conscious disregard of the rights of SCHERER and the other class members, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### (UNJUST ENRICHMENT)

48.  Plaintiff realleges and hereby incorporates by reference the allegations contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

49.   EDDIE BAUER will be unjustly enriched if it is allowed to retain the wages of SCHERER and each other class member sums which were wrongfully retained by EDDIE BAUER as a result of enforcement of its Personal Holidays policy and Incentive Plan.

50.     The Court should therefore order an accounting of such wrongfully retained and/or forfeited

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES, CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-9

1  wages and disgorgement by EDDIE BAUER of the value of such wages.

2  **FOURTH CAUSE OF ACTION**

3  **(VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.)**

4  51.  Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs

5  1 through 43 of the Complaint as though fully set forth herein.

6  52.  The conduct of EDDIE BAUER with respect to non-payment of accrued personal holidays

7  and/or non-payment of wages as a result of the enforcement of its Incentive Plan, as more particularly

8  described above, constitute unlawful, unfair and deceptive business practices within the meaning of

9  California Business and Professions Code section 17200 prohibiting such practices pursuant to the facts set

10  forth hereinabove.

11  53.  EDDIE BAUER's conduct is unlawful because 1) it failed to compensate its employees for

12  personal holidays, 2) its written Personal Holidays policy and the adoption, implementation and enforcement

13  thereof, violates common law and statutory law, including but not limited to California Labor Code section

14  200, et seq., and 3) its Incentive Plan and the adoption, implementation and enforcement thereof, violates

15  common law and statutory law, including but not limited to California Labor Code section 200, et seq.

16  54.  EDDIE BAUER's conduct is deceptive because its written Personal Holidays policy and

17  written Incentive Plan and adoption, implementation, and enforcement thereof, creates the deceptive

18  impression that it is in compliance with all applicable laws and because EDDIE BAUER deceptively refused

19  to disclose and concealed the illegality of its conduct.

20  55.  EDDIE BAUER's conduct is unfair because it unfairly forces employees to forfeit vested

21  personal holidays and denies them compensation in lieu thereof and unfairly denies employees wages earned

22  pursuant to its Incentive Plan.

23  56.  As a result of EDDIE BAUER's unlawful, unfair and deceptive business practices, members

24  of the class and the general public have been denied payment of accrued personal holidays and wages earned

25  pursuant to EDDIE BAUER's Incentive Plan.  EDDIE BAUER is liable to make restitution for such non-

26  payments including interest on the liquidated sum owing, waiting time penalties, and attorneys' fees and

27  costs as determined by the court.  Plaintiff also seeks an injunction enjoining EDDIE BAUER from

28  continuing to commit unlawful, unfair and deceptive practices by failing to compensate its employees for

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-10

1  accrued and vested personal holidays and wages due pursuant to EDDIE BAUER's Incentive Plan.  Plaintiff

2  will amend the complaint at the time of trial to include additional employees who continue to be subjected

3  to EDDIE BAUER's unfair business practices until such time as the practice has been enjoined. Further,

4  Plaintiff reserves the right to supplement the restitution award after trial and until an injunction is issued to

5  include additional persons who have been damaged by EDDIE BAUER's unfair business practices.

6       **WHEREFORE**, Plaintiff requests judgment be entered against Defendants, and each of them, as

7  follows:

8  **ON THE FIRST CAUSE OF ACTION:**

9      1.    For all compensatory damages permitted under the applicable statutes;

10      2.    For all penalties available under the applicable statutes;

11      3.    For interest at the legal rate of interest on the foregoing sums;

12      4.    For an injunction prohibiting Defendants from engaging in such practices;

13      5.    For all other equitable relief available under the applicable statutes;

14      6.    For costs of suit herein incurred including reasonable attorneys' fees; and

15      7.    For such other and further relief as the Court deems just and proper.

16  **ON THE SECOND CAUSE OF ACTION:**

17      1.    For restitution of the wages converted by Defendants as a result of the enforcement of

18  Defendants' unlawful written Personal Holidays policy and Incentive Plan;

19      2.    For compensatory damages in an amount to be proven at trial;

20      3.    For interest at the legal rate of interest on the foregoing sum;

21      4.    For punitive damages in an amount to be proven at trial;

22      5.    For costs of suit herein incurred, including reasonable attorneys' fees; and

23      6.    For such other and further relief as the Court deems just and proper.

24  **ON THE THIRD CAUSE OF ACTION:**

25      1.    For an accounting of wages that have been wrongfully forfeited as the result of Defendants'

26  unlawful written Personal Holidays policy and Incentive Plan and the value thereof;

27      2.    For disgorgement by Defendants and restitution of the value of all wages unjustly retained by

28  Defendants as a result of the Defendants' adoption, implementation and enforcement of its unlawful written

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR LAW STATUTES,
CONVERSION, UNJUST ENRICHMENT AND UNFAIR BUSINESS PRACTICES

Exh. A-11

1  Personal Holidays policy and Incentive Plan;

2      3.    For interest at the legal rate of interest on the foregoing sum;

3      4.    For costs of suit herein incurred, including reasonable attorneys' fees; and

4      5.    For such other and further relief as the Court deems just and proper.

5  <u>**ON THE FOURTH CAUSE OF ACTION:**</u>

6      1.    For disgorgement by Defendants and restitution of the value of all wages unjustly retained by

7  Defendants as a result of the enforcement of it written Personal Holidays policy and Incentive Plan;

8      2.    For interest at the legal rate of interest on the foregoing sum;

9      3.    For an injunction prohibiting Defendants from engaging in such practices;

10     4.    For costs of suit herein incurred, including reasonable attorneys' fees; and

11     5.    For such other and further relief as the Court deems just and proper.

12  DATED: _9/9/07_                    LAW OFFICES OF SHELDON A. OSTROFF

13

14

15                                     By:_____
                                        Sheldon A. Ostroff, APC
16                                      Attorneys for Plaintiff

17  DATED: _9-19-07_                  HUFFMAN & KOSTAS
                                        A Partnership of Professional Corporations
18

19

20                                     By:_____
                                        James C. Kostas, APC
21                                      Attorneys for Plaintiff

22

23

24

25

26

27

28

---
11

Exh.A-12

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Sheldon A. Ostroff, APC, SBN: 108510  James C. Kostas, APC, SBN: 115948<br>Law Offices of Sheldon A. Ostroff   Huffman & Kostas<br>1441 State Street                 1441 State Street<br>San Diego, CA 92101-3421        San Diego, CA 92101-3421 | |

TELEPHONE NO.: **(619) 544-0880**    FAX NO.:

ATTORNEY FOR (Name): **Plaintiff, Kristal Scherer**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W. BROADWAY
MAILING ADDRESS: 330 W. BROADWAY
CITY AND ZIP CODE: SAN DIEGO, CA 92101-3827
BRANCH NAME: HALL OF JUSTICE

CASE NAME: **Scherer, Kristal v. Eddie Bauer, Inc.**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **37-2007-00075523-CU-OE-CTL** |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount          (Amount<br>demanded         demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action (specify):  Four (4)

5. This case [X] is  [ ] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:

Sheldon A. Ostroff, APC, SBN: 108510
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Exh. A-13

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:    San Diego, CA 92101
BRANCH NAME:    Central
TELEPHONE NUMBER:    (619) 685-6062

| PLAINTIFF(S) / PETITIONER(S):    Kristal Scherer |
|---|
| DEFENDANT(S) / RESPONDENT(S): EDDIE BAUER INC |
| SCHERER VS. EDDIE BAUER INC |

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: 37-2007-00075523-CU-OE-CTL |
|---|---|

Judge: Yuri Hofmann           Department: C-60

**COMPLAINT/PETITION FILED:** 09/20/2007

## CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SDSC CIV-721 (Rev. 11-06)

Exh.A-14

1  LAURA M. FRANZE (SBN 250316)
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
2  1700 Pacific Avenue, Suite 4100
   Dallas, Texas 75201
3  Telephone:    214-969-2800
   Facsimile:     214-969-4343
4  E-Mail:         lfranze@akingump.com

5  KALIA C. PETMECKY (SBN 194094)
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
6  2029 Century Park East, Suite 2400
   Los Angeles, California 90067-3012
7  Telephone:    310-229-1000
   Facsimile:     310-229-1001
8  E-Mail:         kpetmecky@akingump.com

9  Attorneys for Defendant
   Eddie Bauer, Inc.

10

11

12                 UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15  KRISTAL D. SCHERER, an          Case No.    **'07 CV  2270 JM  (AJB)**
    individual, on behalf of herself
16  individually, all others similarly
    situated, and on behalf of the general   **DECLARATION OF DIANE**
17  public,                                    **KOVACS IN SUPPORT OF**
                                               **DEFENDANT EDDIE BAUER,**
18              Plaintiffs,                     **INC.'S NOTICE OF REMOVAL OF**
                                               **ACTION**
19        v.
                                               (San Diego Superior Court Case No.
20  EDDIE BAUER, INC., a Delaware   37-2007-00075523-CU-OE-CTL)
    corporation, and DOES 1 through 100,
21  inclusive,

22              Defendants.

23

24

25

26

27

28

6170870

───────────────────────────────────────
               DECLARATION OF DIANE KOVACS

# DECLARATION OF DIANE KOVACS

I, Diane Kovacs, certify and declare as follows:

1.     I am currently employed as a Manager in Eddie Bauer, Inc.'s ("Eddie Bauer") Human Resources Department. In that position, I am familiar with and have personal knowledge of Eddie Bauer's corporate organization, operations, policy-making procedures, workforce distribution, payroll information, and general business affairs.

2.     Eddie Bauer maintains its corporate headquarters in Bellevue, Washington. Eddie Bauer's executive and administrative operations are centrally managed from that location.

3.     Eddie Bauer operates stores and employs individuals in 47 states. There are approximately 756 current employees in California. Of those, approximately 93 employees are full-time and approximately 663 employees are part-time. There are approximately 1,127employees in Washington State. Of those, approximately 582 employees are full-time and approximately 545 employees are part-time.

4.     No one state has more than fourteen percent of Eddie Bauer's work-force. Approximately seven percent of Eddie Bauer's US workforce is in California.

5.     Further, the Company's executive and administrative operations are centrally managed from Washington, not California. From Eddie Bauer's corporate headquarters in Washington, Eddie Bauer makes and implements company-wide operating, financial, employee relations, marketing, development, customer care, accounting, treasury, and legal policy decisions. Even the individual with overall responsibility for the Company's California stores (the Senior Vice President Retail) resides in Washington.

6.     Board of Directors meetings also take place in Washington. Additionally, the Company's financial records are maintained in Washington.

7.     The vast majority of Eddie Bauer's executive and administrative functions occur in Washington. For example, the executive officers of Eddie Bauer, including the president, chief financial officer, executive vice-presidents, and general counsel,

1   maintain their offices at Eddie Bauer's headquarters in Bellevue, Washington. From its

2   headquarters in Washington, the Company manages day-to-day operations company-

3   wide, including determining and implementing policy regarding human resources,

4   marketing, finance, accounting, product distribution, and legal issues.

5       8.   From October 1, 2003 through the present, there are approximately 3,208

6   former full and part-time employees who were employed by Eddie Bauer in California.

7   Approximately 257 of these individuals were formerly full-time employees. As full-

8   time employees, these individuals typically worked eight hours per work day. At the

9   time of their termination, these former employees were earning an average of $18.72 per

10   hour.

11       9.   Approximately 2,951 of Eddie Bauer's former California employees from

12   October 1, 2003 through the present, were considered to be part-time employees. These

13   individuals worked no less than three hours per work day. At the time of their

14   termination, these former employees were earning an average of $8.75 per hour.

15       10.   Current California full-time employees earn an average rate of pay of

16   $20.48. Current California part-time employees earn an average rate of pay of $9.21.

17       11.   From October 1, 2003 through the present, there have been approximately

18   3,964 current and former employees employed by Eddie Bauer in California.

19       12.   Attached hereto as Exhibit "A" is a true and correct copy of relevant

20   excerpts of Eddie Bauer's US – Vacations and Holidays Policy.

21       13.   Attached hereto as Exhibit "B" is a true and correct copy of relevant

22   excerpts of Eddie Bauer's Team Incentive Plan and Management Incentive Plan.

23       I declare under penalty of perjury under the laws of the United States that the

24   foregoing is true and correct.

25       Executed on this 30th day of November, 2007, in Bellevue, Washington.

26

27                                 *Diane Kovacs*

28                                 Diane Kovacs

maintain their offices at Eddie Bauer's headquarters in Bellevue, Washington. From its headquarters in Washington, the Company manages day-to-day operations company-wide, including determining and implementing policy regarding human resources, marketing, finance, accounting, product distribution, and legal issues.

8.    From October 1, 2003 through the present, there are approximately 3,208 former full and part-time employees who were employed by Eddie Bauer in California. Approximately 257 of these individuals were formerly full-time employees. As full-time employees, these individuals typically worked eight hours per work day. At the time of their termination, these former employees were earning an average of $18.72 per hour.

9.    Approximately 2,951 of Eddie Bauer's former California employees from October 1, 2003 through the present, were considered to be part-time employees. These individuals worked no less than three hours per work day. At the time of their termination, these former employees were earning an average of $8.75 per hour.

10.    Current California full-time employees earn an average rate of pay of $20.48. Current California part-time employees earn an average rate of pay of $9.21.

11.    From October 1, 2003 through the present, there have been approximately 3,964 current and former employees employed by Eddie Bauer in California.

12.    Attached hereto as Exhibit "A" is a true and correct copy of relevant excerpts of Eddie Bauer's US – Vacations and Holidays Policy.

13.    Attached hereto as Exhibit "B" is a true and correct copy of relevant excerpts of Eddie Bauer's Team Incentive Plan and Management Incentive Plan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 30th day of November, 2007, in Bellevue, Washington.

_____
Diane Kovacs

**EXHIBIT A**

## U.S. Vacations and Holidays

- <u>Vacations</u>
- <u>Holidays</u>
- <u>Personal Holidays</u>

## VACATIONS

If you are a regular status associate, you earn an annual vacation allowance that depends on your length of service, hours worked and your position. If you are a part-time limited associate, you are not eligible for paid vacation. If your employment with Eddie Bauer ends, you will be paid for unused accrued vacation.

**Accrual**

The following table shows the vacation allowance that applies to you. If you are a regular nonexempt associate, your vacation allowance is based on the number of hours you work in each pay period, as well as on your length of service as a regular associate.

**Limits**

You may accrue vacation up to a maximum of two times your annual vacation allowance. For example, if your annual vacation allowance is two weeks, and you have accrued four weeks, you have reached your accrual limit. Once you take vacation, and your accrued vacation balance falls below the maximum, you may again accrue additional vacation time.

| Vacation Accrual Rate Per Pay Period | |
|---|---|
| **Regular Status (Full Time)** | |
| Up to 5 years | 3.077 hours (10 days/year) |
| From 5 to 15 years | 4.612 hours (15 days/year) |
| Over 15 years | 6.154 hours (20 days/year) |
| **Officers, Directors and Managers*** | |
| Up to 5 years | 4.612 hours (15 days/year) |
| From 5 to 15 years | 6.154 hours (20 days/year) |
| Over 15 years | 6.154 hours (20 days/year) |

* At Retail stores, "Manager" is defined as Store Manager only. Co-Managers and Assistant Managers are "Regular Status".

**Part-Time and Nonexempt Associates**

Regular hourly status nonexempt and part-time regular exempt associates who work fewer than 80 hours per pay period will earn a vacation allowance that is prorated by the ratio of their hours worked in a pay period to 80 hours.

For example, suppose you have one year of service and you worked 42 hours in your most recent pay period. For that pay period, you will earn a vacation allowance of 1.615 vacation hours. Here is how the allowance is calculated:

*42/80 hours x 3.077 hours = 1.615 hours*

**Using and Scheduling Vacations**

You may take your accrued vacation hours at any time, provided your request is approved in advance by your supervisor. Vacations will not be scheduled during peak

Exh. A-3

periods. Vacation pay will not exceed vacation balance. Vacation hours used in excess of accrual will not be paid.

If a paid holiday falls during the time you are taking vacation, the holiday will not count as vacation time.

Exempt associates must use vacation pay in full-day increments.

Nonexempt associates may use vacation hours in quarter hour increments.

## HOLIDAYS

Eddie Bauer provides regular status associates with 11 paid company holidays per year. This includes seven nationally recognized holidays and 4 personal holidays.

Following are the holidays Eddie Bauer observes:

- New Year's Day
- Martin Luther King, Jr. Day
- Memorial Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Christmas Day
- Four Personal Holidays

**Exempt & Nonexempt Salaried Associates:**

- Full-time exempt and nonexempt salaried associates will receive holiday pay at their straight-time rate for a full working day up to a maximum eight hours, (except in Rhode Island and Massachusetts where state law dictates otherwise).
- Exempt and nonexempt salaried associates should be scheduled for the holiday the week immediately before, during, or immediately after the holiday. If the management staffing situation does not allow this, the holiday must be taken within 60 days or it will be forfeited.
- There is a one month waiting period from the date of hire before a personal day can be used.

**Nonexempt Hourly Associates:**

- Full-time Regular status nonexempt associates will receive 8 hours of holiday pay.
- Part-time Regular status associates will receive holiday pay based on the average number of hours worked during the previous four weeks (see calculation below). Stores should NOT enter benefit time for associates into Time & Attendance. Payroll will automatically pay the appropriate amount of hours to these associates.
- Part-time limited associates are not eligible for holiday pay.
- There is a one month waiting period from the date of hire before a personal day can be used.

**Formula for calculating Holiday hours:**

[(Sum of total hours worked during the previous 4 weeks) divided by 4] then divided by 5 = Holiday Hours

Example:

Exh. A-4

An associate works 35 hours per week during the 4 weeks prior to a holiday. They would receive 7 holiday hours.
[(35+35+35+35)/4] / 5 = 7 holiday hours

To receive pay for a holiday, you may not be absent without authorization on the working day before the holiday or the working day after.

**If you are Required to work on a Company-observed Holiday:**

- Nonexempt Hourly
  A nonexempt hourly associate will be paid for the hours worked, plus the holiday pay to which she or he would otherwise be entitled, up to eight hours (except in Rhode Island and Massachusetts, where state law dictates otherwise). In Massachusetts and Rhode Island, nonexempt hourly associates are paid time and a half for any time worked on holidays (specified by the state statute), which is excluded in the calculation of overtime.

- Exempt & Nonexempt Salaried Management
  If you are required to work on a company observed holiday, you will be paid for the hours worked at regular pay and scheduled to take the holiday the week immediately before, during, or after the actual holiday. If the management staffing does not allow this, the holiday must be taken within 60 days or it will be forfeited.

## PERSONAL HOLIDAYS

Personal holidays are allocated to associates at the beginning of each year. Full-time associates receive an allocation of 32 hours (representing 4 personal holidays, 8 hours for each day). Part-time associates receive an allocation of 16 hours (representing 4 personal holidays at 4 hours for each day). This allocation does not change for associates working part-time or variable schedules. Personal holidays do not carry over to the next year and if unused will be forfeited and unpaid.

Associates hired during the course of the year are eligible for four personal holidays, depending upon their date of hire. Unused personal holidays/hours for associates rehired within the same year will be reviewed.

**Note:** Hours reported to payroll in excess of the annual allocation will be docked from an associate's paycheck. Any corrections will occur on the next normal payroll cycle. Full-time associates should use personal holidays in 8 hour increments. Part-time associates may use personal holidays in 4 hour increments.

**Personal Holidays: Regular Status (Full-Time) Associates**

|  | Personal Holiday |
|---|---|
| January 1 - March 31 | 32 hours |
| April 1 - June 30 | 24 hours |
| July 1 - September 30 | 16 hours |
| October 1 - October 31 | 8 hours |
| November 1 - December 31 | 0 hours |

**Personal Holidays: Regular Status (Part-Time) Associates**

Part-time regular status exempt and nonexempt associates are entitled to the same number of personal holidays as full-time associates, but the paid hours per holiday are adjusted as indicated by the chart below.

Exh. A-5

|                              | Personal Holiday |
| ---------------------------- | ---------------- |
| January 1 - March 31         | 16 hours         |
| April 1 - June 30            | 12 hours         |
| July 1 - September 30        | 8 hours          |
| October 1 - October 31       | 4 hours          |
| November 1 - December 31     | 0 hours          |

Exh. A-6

## SOP
## Incentive Programs

- **US:** Store Team Incentive Plan
- **CDN:** Store Team Incentive Plan
- **US:** Store Management Incentive Plans
- **CDN:** Store Management Incentive Plans

- Management & Team Incentive Eligibility
- Store Management Shrink Incentive Program
- Incentive Payout Schedule

## US STORE TEAM INCENTIVE PLAN

Earn a base level incentive when store achieves Plan and incremental incentive for every full percent over Plan.

| Store Sales | US |
|---|---|
| Plan (base level payout) | $.30/hr |
| Plan + 1% - 10% (incremental $) | $.05/hr |
| Maximum Incentive Payout | $.80/hr |

The WSAP payroll tool will continue to have an automatic incentive tracking component. This allows stores to track and post both management and team incentive potential in real time.

## CDN STORE TEAM INCENTIVE PLAN

Earn a base level incentive when store achieves Plan and incremental incentive for every full percent over Plan.

| Store Sales | CAN |
|---|---|
| Plan (base level payout) | $.40/hr |
| Plan + 1% - 10% (incremental $) | $.05/hr |
| Maximum Incentive Payout | $.90/hr |

The WSAP payroll tool has an automatic incentive tracking component. This allows stores to track and post both management and team incentive potential in real time.

## US STORE MANAGEMENT INCENTIVE PLANS

Earn a base level incentive when store achieves Plan and incremental incentive for each dollar over plan.*

| Store Sales | Store Director | Store Manager | Co-Manager | Assistant Store Manager |
|---|---|---|---|---|
| Plan (base level payout) | $700 | $500 | $400 | $300 |
| Plan + 1% - 4% (incremental %) | 3.0% | 2.5% | 2.0% | 1.5% |
| Plan + 5% (incremental %) | 3.5% | 3.0% | 2.5% | 2.0% |

Exh.B.7

\* Store must achieve a full 1% over Plan to start earning incremental incentive for every dollar over Plan.

- You will be eligible for incentive when your store achieves or beats Plan.
- Once you beat Plan by 1%, you earn an incremental percentage payout for every dollar over Plan.
- As an accelerator, once your store reaches 5% over Plan, the incremental percentage increases for every dollar over Plan.
- There is no cap on potential incremental earnings.
- Payroll management remains critical to expense control. For all management sales incentive plans, payroll goals must be met in order to qualify for sales incentive achieved (achieving payroll will be determined by a favorable hours variance on the WSAP tool).
- It is strictly against company policy to falsify performance measurements to qualify for incentive. This includes, but is not limited to sales, payroll, SPIFFs and contests.

### CDN STORE MANAGEMENT INCENTIVE PLANS

Earn a base level incentive when store achieves plan; and incremental incentive for each dollar over plan.\*

| Store Sales | Store Director | Store Manager | Co-Manager | Assistant Store Manager |
|---|---|---|---|---|
| Plan (base level payout) | $900 | $650 | $525 | $400 |
| Plan + 1 – 4% (incremental %) | 3.0% | 2.5% | 2.0% | 1.5% |
| Plan + 5% (incremental %) | 3.5% | 3.0% | 2.5% | 2.0% |

\* Store must achieve a full 1% over plan to start earning incremental incentive for every dollar over plan.

- You will be eligible for incentive when your store achieves or beats Plan.
- Once you beat Plan by 1%, you earn an incremental percentage payout for every dollar over Plan.
- As an accelerator, once your store reaches 5% over Plan, the incremental percentage increases for every dollar over Plan.
- There is no cap on potential incremental earnings.
- Payroll management remains critical to expense control. For all management sales incentive plans, payroll goals must be met in order to qualify for sales incentive achieved (achieving payroll will be determined by a favorable hours variance on the WSAP tool).
- It is strictly against company policy to falsify performance measurements to qualify for incentive. This includes, but is not limited to sales, payroll, SPIFFs and contests.

### MANAGEMENT & TEAM INCENTIVE ELIGIBILITY

- If a manager transfers locations during the month, the incentive will be based from the store they started the month at and the position held there (either associate level or manager).

Exh. B-8



- Non-management associate transfers (or borrowed associates) which occur anytime during the month will be eligible based on the number of hours worked in each store that achieved incentive that month.
- Same-store job changes that occur mid-month (associate to management and vice versa) will be eligible based on the month-end position.
- Managers going on or returning from Leave of Absence (LOA) are eligible for that month's incentive IF they work two (2) full weeks of a 4-week month or three (3) full weeks of a 5-week month.
- New managers are eligible for the monthly sales incentive plan the first full fiscal month after they are hired.
- New hourly associates are eligible for the monthly sales incentive plan upon start date and paid for all hours worked that fiscal month (if applicable).
- New stores must be open at least two (2) full weeks of the fiscal month to be eligible for monthly sales incentive; otherwise, eligibility begins the first full fiscal month the store is open.
- For all incentive plans, all associates must be actively employed on the date of payout in order to receive payment (except where state law requires otherwise).

## STORE MANAGEMENT SHRINK INCENTIVE PROGRAM

### Shrinkage/Inventory Control

The store management shrinkage incentive for 2007 is an annual payout for achieving and maintaining outstanding shrinkage results.

- Goals are based on each store's actual 2006 performance OR the average of the past three (3) counts using the most aggressive number. These goals set the expectation that all stores must maintain current good performance or increase performance to bring their shrink % in line with company averages and expectations.
- All stores are scheduled to complete a physical inventory count in First Quarter 2008.

### Shrink Incentive Eligibility

- Management staff is eligible based on the position and location as of September 30, 2007. Incentive may be prorated.
- Associates must be in a management position by September 30, 2007.
- Promotions from associate level to management after September 30, 2007 are not eligible.
- New hires after September 30, 2007 are not eligible.
- New hires from December 31, 2006 - September 30, 2007 will be prorated to the first full fiscal month after hire date.
- Leaves of absence greater than one (1) month will be prorated for the length of the leave.
- Associates must be in a management position through the end of the fiscal year to remain eligible (i.e., demotion to sales associate prior to 12/30/07 disqualifies associate from payout).
- All associates must be actively employed on the date of payout to receive payment.

Exh. B-9

- Payout date is anticipated by April 2008.

**Shrink Incentive Payouts:**
- Assistant Store Manager:      $500
- Co-Manager:      $600
- Store Manager:      $1,000
- Store Director:      $1,200

For questions regarding this, or any other incentive program, please contact your District Director or Michelle Maycock in Human Resources at 425-755-7153.

**INCENTIVE PAYOUT SCHEDULE**
**2007 Sales Incentive**

| MONTH | TEAM/MGMT | MONTH | TEAM/MGMT |
|---|---|---|---|
| January | 2/9/2007 | July | 8/10/2007 |
| February | 3/9/2007 | August | 9/7/2007 |
| March | 4/20/2007 | September | 10/19/2007 |
| April | 5/18/2007 | October | 11/16/2007 |
| May | 6/15/2007 | November | 12/14/2007 |
| June | 7/13/2007 | December | 1/11/2008 |

- Dates are anticipated, based on when results are calculated. Dates may be changed at any time, as business requires.
- Payout dates are subject to change.

**US Only:**
- Incentive payments are considered taxable wages, subject to all applicable federal, state and local taxes.
- Incentive payments are excluded from 401(k) and profit sharing calculations.

This plan supersedes all other store incentive plans. Eddie Bauer reserves the right to amend, modify, suspend or terminate this plan at any time without advance notice to plan participants. Additional performance measures may be incorporated at any time in response to specific business needs/issues. Eddie Bauer reserves the right to collect any overpayments made as the result of calculation and/or entry errors.

Stores EB Net | EB Net Feedback | Career Opportunities | WSAP Tool

Copyright © 1998-2007 Eddie Bauer Holdings, Inc. All rights reserved.

Exh. B-10