LAW OFFICES OF SHELDON A. OSTROFF
Sheldon A. Ostroff, APC (State Bar #108510)
1441 State Street
San Diego, California 92101
(619) 544-0881
E-Mail: sostoflaw@aol.com

HUFFMAN & KOSTAS
A Partnership of Professional Corporations
James C. Kostas, APC (State Bar # 115948)
David M. Huffman, APC (State Bar # 69026)
1441 State Street
San Diego, California 92101
(619) 544-0880
E-Mail: jkostas@aol.com
E-Mail: dmhuffmanatty@aol.com

Attorneys for Class Members Kristal Scherer
and Kristine Ochoco

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTAL D. SCHERER, an individual, on behalf of herself individually, all others similarly situated, and on behalf of other members of the general public;<br><br>        Plaintiffs,<br><br>v.<br><br>EDDIE BAUER, INC. a Delaware corporation, and DOES 1 to 10, inclusive,<br><br>        Defendants. | CASE NO.  07-CV-2270-JM-AJB<br><br>[Assigned to the Honorable Jeffrey T. Miller]<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:   March 14, 2008<br>Time:  1:30 p.m.<br>Ctrm.: 16 |

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.  Operative Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  STANDARD FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   EDDIE BAUER'S ADMINISTRATION OF ITS INCENTIVE PLANS
      VIOLATES LABOR CODE SECTION 221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Eddie Bauer Breached the Express Terms of its Incentive Plans
            by Deducting the Cash Value of Returned Merchandise Purchased
            Through its Catalog or at a Different Store in Calculating Whether
            a Store Met or Exceeded the Sales Target Set Forth in the Incentive Plans  . . . . . . 6

      B.    Eddie Bauer's Reliance on *Prachasaisoradej* is Misplaced and Eddie
            Bauer's Administration of the Incentive Plans Defeats Plaintiffs
            and the Class Members' Expectation of Incentive Compensation  . . . . . . . . . . . . . . 8

            1.    The analysis in *Prachasaisoradej* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Controlling authority establishes that Eddie Bauer's
                  business practices constitute a violation of section 221 . . . . . . . . . . 10

V.    PLAINTIFFS' FIFTH CAUSE OF ACTION PROPERLY PLEADS A
      VIOLATION OF THE UCL ARISING OUT OF EDDIE
      BAUER'S UNLAWFUL, DECEPTIVE AND UNFAIR
      ADMINISTRATION OF ITS INCENTIVE PLANS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.   PLAINTIFFS POSSESS STANDING TO ASSERT THE ALLEGED CLAIMS . . . . . . . . 16

VII.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

-i-

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3  *Balisteri v. Paficia Police Dep't.*  (1988 9th Cir.) 901 F.2d 696  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

4  *City of Arcadia v. United States EPA* (2005 9th Cir.) 411 F.3d 1103  . . . . . . . . . . . . . . . . . . . . . . . . . **6**

5  *G.N.I.C. Indem. Corp. v. Weisman* (1986 9th Cir.) 803 F.2d 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

6  *Gilligan v. Jamco Develop. Corp.* (9th Cir. 1997) 108 F.3d 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

7  *Hanlon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3,17**

8  *International Audio-text network, Inc. v. AT&T Co.* (2nd Cir. 1995) 62 F.3d 69 . . . . . . . . . . . . . . . . . . **17**

9

### STATE CASES

10  *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255  . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11,15**

11  *Belton v. Comcast Cable Holdings, LLC* (2007) 151 Cal.App.4th 1224 . . . . . . . . . . . . . . . . . . . . . . . . **14**

12  *Brothers v. Hewlett-Packard Co.* 2007 WL 485979 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

13  *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394 . . . . . . . . . . . . . . **14**

14  *Cel-Tech Communications, Inc. v. Los Angeles Telephone Co.* (1999) 20 Cal.4th 163  . . . . . . . **11, 14, 15**

15  *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182 . . . . . . . . . . . . . . . . . . . . **8**

16  *Dauherty v. American Honda Motor Co.* (2006) 144 Cal.App.4th 824  . . . . . . . . . . . . . . . . . . . . . . . . . **14**

17  *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th  845  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

18  *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App. 4th 1109 . . . . . . . . . . . . . . . . . . . . . . . . . **10**

19  *Levy v. State Farm Mut. Auto Ins. Co.* (2007) 150 Cal.App.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

20  *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115  . . . . . . . . . . . . . . . . **15**

21  *McKell v. Washington Mutual Inc.* (2006) 142 Cal.App.4th 1457  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

22  *Pasterona v. Nationwide Ins.* (2003) 112 Cal.App.4th 190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

23  *Pfizer, Inc. v. Superior Court* (2006) 141 Cal.App.4th 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

24  *Prachasaisoradej v. Ralphs Grocery Company, Inc.* (2007) 42 Cal.4th 217  . . . . . . . . . . . **2,6,8,9,10,11**

25  *Progressive West Insurance Company v. Yolo County Superior Court* (2005) 135 Cal.App.4th 263 **15,16**

26  *Quillian v. Lion Oil Company* (1979) 96 Cal.App.3d 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

27

*-ii-*

28

*Sav-On Drug Stores, Inc. v. Superior Court* (Rocher) (2004) 34 Cal.4th 319 . . . . . . . . . . . . . . . . . . . . **17**

*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13,16**

*Scripps Clinic v. Superior Court* (2003) 108 Cal.App 4th 917 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

*Smith v. Superior Court (*L'Oreal USA, Inc.) (2006) 39 Cal.4th 77 . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

 *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700 . . . . . . . . . . . . . . . . . . . **14**

*South Bay Chevrolet v. General Motors Acceptance Corp.*  (1999) 72 Cal.App.4th 861 . . . . . . . . . . . . **14**

*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

## REGULATIONS

California Code of Regulations, Title 8, Section 11070, Subdivision 8 (Regulation 11070) . . . . . . . . . . **2**

## RULES

Civ.LR 5.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3,6**

## STATUTES

Business & Professions Code Section 17200, et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1,15**

Labor Code Section 200, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4,9**

Labor Code Section 221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

Labor Code Section 227.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

# I. INTRODUCTION

The instant action arises out of Eddie Bauer, Inc.'s (*"Eddie Bauer"*) unlawful policy and practice of 1) requiring its employees to forfeit vested "vacation benefits" that are not used in the vacation year in which they were earned without compensation pursuant to its "Personal Holidays" plan ("Vacation Policy")[1] and 2) unlawfully withholding wages earned by its employees pursuant to its written Store Team Incentive Plan and Store Team Management Incentive Plan (collectively "Incentive Plans").

In its memorandum of points and authorities, Eddie Bauer mischaracterizes Plaintiffs' theories of liability, the allegations contained in the operative First Amended Complaint ("FAC")[2] and the applicable law. The most glaring misrepresentation by Eddie Bauer appears at page 4, lines 13-16 at its memorandum of points and authorities. Eddie Bauer misrepresents to this Court that "[a]ccording to the Complaint, 'sales' under the Incentive Programs were calculated to be net of any customer catalog merchandise returns to the store, as well as returns of merchandise to the store even if purchased from another Eddie Bauer retail store (FAC, ¶13)." (Eddie Bauer's Memorandum of Points and Authorities, p. 4, l. 13-16). This representation is patently false. Paragraph 13, and the entirety of the FAC, alleges the exact opposite: Eddie Bauer's breach of the Incentive Plans, violation of California Labor Code Section 221[3] and violation of the Unfair Competition Law, Business and Professions Code Section 17200, *et seq.* ("UCL") arises out of Eddie Bauer's unlawful practice of reducing the dollar value of gross sales generated by each retail store by the dollar value of purchases that were returned to stores other than the store at which such item was purchased

---

[1] Plaintiffs' First Amended Complaint also claims that Eddie Bauer's Vacation Policy violates statutory and common law which prohibits the forfeiture of accrued vacation benefits and requires the payment of such benefits upon termination of employment. California Labor Code Section 227.3; *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774. This theory of liability is relevant in the present motion as it relates to the standing of the representative plaintiffs to assert such claim.

[2] Following the filing of the FAC, Plaintiffs filed an unopposed Motion to Amend First Amended Complaint to correct the spelling of Plaintiff Kristine Ochoco's name. The substantive allegations of the FAC were not changed by such unopposed motion and Eddie Bauer's motion to dismiss is based entirely on the allegations contained in the FAC. Consequently, all references to the charging allegations will be those contained in the FAC.

[3] All subsequent unlabeled statutory references are to the Labor Code.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1

1   in determining eligibility for compensation under the Incentive Plans.

2       Plaintiffs' theories of liability with respect to the Incentive Plans is based on sections 221, 400-410,

3   California Code of Regulations, Title 8, Section 11070, Subdivision 8 (Regulation 11070) and case law

4   interpreting such statutory authorities, all of which prohibit employer deductions or charge backs against

5   wages attributable to losses suffered by an employer which were beyond the control of its employees.

6   Plaintiffs' FAC states a justiciable claim based on this theory of liability.

7       Contrary to Eddie Bauer's assertion, the holding by the California Supreme Court in

8   *Prachasaisoradej v. Ralphs Grocery Company, Inc.* (2007) 42 Cal.4th 217, which was decided on

9   completely different facts, does not support Eddie Bauer's contention that its Incentive Plans do not violate

10  section 221.  In *Prachasaisoradej,* eligibility for participation in the incentive plan was based on the net

11  earnings of the store where the individual worked, was based on a formula that did not include

12  impermissible set offs and/or deductions and the terms of such incentive plan were strictly followed by the

13  employer in its implementation and administration.  *Id.* at 229.  In this case, Eddie Bauer's Incentive Plans

14  simply condition entitlement to incentive compensation on the gross sales of the store in which an employee

15  works.  The Incentive Plans do not provide for any type of offset or deduction in computing a store's gross

16  sales, and in particular, do not provide for the reduction of such sales figures by the dollar value of catalog

17  returns or returns of merchandise that was purchased at other store locations.  In addition, Eddie Bauer does

18  not comply with the plain terms of its Incentive Plans.  For the reasons set forth in more detail below, Eddie

19  Bauer's reliance on *Prachasaisordej* is misplaced.

20      Eddie Bauer's argument that Plaintiffs' first cause of action for breach of contract is defective

21  because Plaintiffs have failed to allege the "requisite breach" is simply not correct.  In ¶¶10, 40 & 41 of the

22  FAC Plaintiffs specifically allege the express terms of the Incentive Plans and in ¶¶42, 43 & 45 of the FAC

23  Plaintiffs specifically allege the basis of Eddie Bauer's breach of such express terms.  Reference to such

24  charging allegations is specifically omitted from Eddie Bauer's memorandum of points and authorities.

25      Eddie Bauer's motion to dismiss Plaintiffs' second cause of action which arises out of Eddie Bauer's

26  violation of section 221 is based on 1) its misplaced reliance on *Prachasaisorade*j, 2) its mischaracterization

27  of the express terms of the Incentive Plans and 3) its selective editorialization of the charging allegations

28

of the FAC.  Eddie Bauer's motion, as it pertains to Plaintiffs' fifth cause of action for violation of the UCL, is equally flawed since it is based on the same legal authorities that are cited in support of its motion to dismiss the second cause of action.  In that regard, Eddie Bauer merely asserts that Plaintiffs' derivative UCL claim must fail because Plaintiffs cannot plead a section 221 violation as a matter of law.  Not only is this argument incorrect as it relates to the legal prong of the UCL, it also demonstrates, at most, a pedestrian understanding of the UCL by ignoring the two other prongs of the UCL.  Plaintiffs specifically allege that Eddie Bauer's conduct constitutes a violation of the deceptive and unfairness prongs of the UCL.

In an attempt to defeat Plaintiffs' well pled complaint, Eddie Bauer also seeks to introduce extrinsic evidence and makes arguments which do not have any evidentiary support for the proposition that the Representative Plaintiffs lack standing to act in such capacity.  However, the extrinsic evidence offered by Eddie Bauer actually supports the express allegations of the FAC and belies Eddie Bauer's argument[4].  In addition, even if Eddie Bauer's argument that the Class Representatives suffered damages that are different from the class they seek to represent is correct, it does not defeat their ability to act in such capacity so long as such damages were suffered as a result of Eddie Bauer's unlawful Vacation Policy and Incentive Plans. *Hanlon v. Dataproducts Corp.*  (9th Cir. 1992) 976 F.2d 497, 508.

For the reasons set forth herein, Eddie Bauer's Partial Motion to Dismiss Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied in its entirety.

## II.  SUMMARY OF FIRST AMENDED COMPLAINT

**A. Claims.**

The FAC seeks, among other things, restitution, compensatory and putative damages as well as injunctive and declaratory relief and is based on five claims, namely 1) breach of contract; 2) violation of

---

[4] Although a Court may consider facts contained in documents placed "in issue" by a complaint in connection with a motion to dismiss, assuming a proper foundation has been established for admissibility, the documents sought to be introduced by Defendant either support the allegations of the FAC or are irrelevant to the allegations of the FAC.  Furthermore, no proper foundation has been laid as to their admissibility.  Lastly, Eddie Bauer has failed to comply with Civ.LR 5.1(e).  Consquently, this Court should disregard Exhibits "A" through "C" attached to the Declaration of Kalia Petmecky in Support of Defendant Eddie Bauer, Inc.'s Partial Motion to Dismiss Second Amended Complaint and the entirety of such declaration

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

3

1    Labor Code section 200, *et seq.*; 3) conversion; 4) unjust enrichment; and 5) violation of the UCL.

2    Plaintiffs' FAC is predicated upon Eddie Bauer's violation of California law which prohibits the forfeiture

3    of accrued and unused vacation benefits (i.e. a "use it or lose it" vacation policy), violation of section 221,

4    and breach/violation of the express terms of its Incentive Plans pursuant to which its employees were entitled

5    to receive compensation based on the gross sales generated by the store such employees worked unaffected

6    by cash refunds provided to customers who returned merchandise purchased at another store or through

7    Eddie Bauer's catalog.

8    **B. Operative Allegations.**

9    Plaintiffs are former employees of Eddie Bauer who worked for Eddie Bauer in California on a full-

10   time basis (FAC, ¶¶21, 25 & 29). Whereas Representative Plaintiff Kristal Scherer ("Scherer") worked for

11   Eddie Bauer in California from October 31, 2005 through in or about June 27, 2005, Representative Plaintiff

12   Kristine Ochoco ("Ochoco") worked for Eddie Bauer from in or about February 2007 through in or about

13   October 2007 (FAC, ¶¶21 & 25). At all times during the tenure of their employment, the Representative

14   Plaintiffs earned paid vacation and incentive compensation pursuant to Eddie Bauer's written Personal

15   Holidays Policy and Incentive Plans (FAC, ¶¶22 & 26). Scherer earned commission pursuant to Eddie

16   Bauer's written Incentive Plan and Ochoco earned compensation in the form of an increased hourly rate

17   pursuant to Eddie Bauer's written Incentive Plan (FAC, ¶¶22 & 26).

18   Employees who worked at Eddie Bauer's California retail stores earned compensation pursuant to

19   Eddie Bauer's Incentive Plans. An employee's right to compensation under the Incentive Plans is

20   exclusively based on the sales performance of the retail store in which an employee works (FAC, ¶10).

21   Pursuant to the express terms of the Incentive Plans, employees who work in a store that meets or exceeds

22   the prescribed gross sales quota set forth in the applicable plan receives either a specified increased hourly

23   wage and/or commission (FAC, ¶10). Eligibility for incentive payments was only predicated on an

24   individual store's gross sales and not on the retail store's profitability and/or performance of any other retail

25   store, division, district and/or Eddie Bauer's catalog business (FAC, ¶10). The Incentive Plans did not

26   provide for any deductions and/or offsets to the computation of store sales, and in particular, did not provide

27   for the deduction of the dollar value of items that were purchased at other stores or through Eddie Bauer's

28

1    catalog business and returned to a different store (FAC, ¶31).

2    The written Incentive Plans constituted a contract of employment between Plaintiffs and the putative

3    class members on one hand and Eddie Bauer on the other hand, which provided, among other things, that

4    if the dollar value of sales generated by a retail store met or exceeded a predetermined target, the employees

5    at that store would be entitled to additional compensation pursuant to a specified schedule set forth in the

6    Incentive Plans.  Eddie Bauer breached such contract of employment by deducting and/or offsetting from

7    a store's sales the dollar value of the items that were purchased at other stores or through Eddie Bauer's

8    retail catalog and returned to a different store (FAC, ¶¶40-42).  Eddie Bauer's policy of deducting the cash

9    value of returned merchandise purchased at another store or through its catalog from the gross sales of the

10   store to which such merchandise was returned constituted a breach of Eddie Bauer's contract of employment

11   with the Plaintiffs and putative class members.  As a result of such breach, Plaintiffs and the class members

12   were prevented from meeting their respective sales targets and they were denied the additional wages

13   provided by the Incentive Plans  (FAC, ¶¶43-45).

14   In addition to other forms of compensation, Eddie Bauer had a written Personal Holidays policy

15   applicable to its California employees whereby Eddie Bauer's full-time employees, as part of their

16   compensation, received up to thirty-two (32) hours of paid personal holidays and Eddie Bauer's part-time

17   employees, as part of their compensation, were provided up to sixteen (16) hours of paid personal holidays

18   to be used for any reason such as vacation, personal business, religious observances or ethnic holidays (FAC,

19   ¶8).  Pursuant to the express terms of Eddie Bauer's Personal Holidays policy, employees were required to

20   forfeit vested personal holidays which were not used by November 26 of the calendar year in which such

21   holidays were earned (FAC, ¶9).  As a result of Eddie Bauer's unlawful Personal Holidays policy, Plaintiffs

22   and the class members were forced to forfeit earned vested personal hours and denied compensation in lieu

23   thereof (FAC, ¶¶23, 27, 29 & 34).

24   The class of persons on whose behalf the Representative Plaintiffs bring the instant action is defined

25   in ¶29 of the FAC.  This class of persons consists of thousands of individuals who, except as to the amount

26   of damages, are otherwise identical in that each class member was injured in the same way as a result of

27   Eddie Bauer's common course of conduct  (FAC, ¶34).

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE
BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  STANDARD FOR MOTION TO DISMISS

A motion to dismiss is designed to test the legal sufficiency of the claims asserted in a complaint. Many courts view motions to dismiss with disfavor and such motions are rarely granted.  *Gilligan v. Jamco Develop. Corp.* (9th Cir. 1997) 108 F.3d 246, 249.  A complaint will not be dismissed under Federal Rule of Civil Procedure 12(b)(6), where, as in the instant case, legally cognizable legal authorities support the various claims and no factual or legal defect appears on the face of the pleading before the court (*G.N.I.C. Indem. Corp. v. Weisman*  (1986 9th Cir.) 803 F.2d 504; *City of Arcadia v. United States EPA* (2005 9th Cir.) 411 F.3d 1103, 1106; *Balisteri v. Paficia Police Dep't.* (1988 9th Cir.) 901 F.2d 696, 699).  When ruling on the present motion, the court is required to accept as true all material allegations contained in the FAC[5].  The material allegations, as detailed herein, support the claims which arise out of Eddie Bauer's violation of California law by adopting, implementing and enforcing a "use it or lose it" Vacation Policy as well as violating California law by withholding wages earned by its employees pursuant to its Incentive Plans in direct breach of such Incentive Plans.

### IV.  EDDIE BAUER'S ADMINISTRATION OF ITS INCENTIVE PLANS VIOLATES LABOR CODE SECTION 221

**A.  Eddie Bauer Breached the Express Terms of its Incentive Plans by Deducting the Cash Value of Returned Merchandise Purchased Through its Catalog or at a Different Store in Calculating Whether a Store Met or Exceeded the Sales Target Set Forth in the Incentive Plans.**

Entitlement to incentive payments is based on the express terms of the Incentive Plans. *Prachasaisoradej v. Ralphs Grocery Company, Inc.* (2007) 42 Cal.4th 217.  In this case, such express terms provide that an employee's eligibility for an incentive payment is based on the gross sales of the store in which such employee works and not on the retail stores' profitability and/or the performance of any other retail store, division, district and/or Eddie Bauer's catalog business (FAC, ¶10).  This allegation is not refuted by the extrinsic evidence contained in Exhibit "A" attached to the Declaration of Kalia C. Petmecky, which purports to be a copy of the Incentive Plans.  A review of this document reveals that it is consistent

---

[5] As previously noted in footnote 4, the exhibits attached to the Declaration of Kalia Petmecky, although submitted without proper foundation, actually support the allegations of the FAC.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

6

with the allegations in the FAC[6] and the characterization of such plans therein.

Exhibit "A" is a five (5) page document.  However, only pages two (2), three (3) and a portion of page four (4) describe the Incentive Plans.  The balance of the five (5) page document consists of a cover page and/or refers to other compensation plans which are not the subject of the instant litigation.  Page two (2) provides that employees "earn a base level incentive when store achieves Plan incentive for every full percent over Plan."  Page two (2), which also contains the schedule of incremental incentive increases, further states that such increases will be based exclusively on "**Store Sales**."  Page three (3) of Exhibit "A" makes it clear that an employee's entitlement to an incentive bonus is conditioned only on the performance of the store in which the employee is working and such performance is measured solely by the gross sales benchmark provided in the Plan and states:  "store must achieve a full one (1) percent over Plan to start earning incremental incentive for every dollar over plan and provides:

> \* Store must achieve a full 1% over Plan to start earning incremental incentive for every dollar over Plan.
>
> • You will be eligible for incentive when your store achieves or beats Plan.

The terms of entitlement to incentive payments under the Incentive Plans are identical for both "managerial" and "non-managerial" employees.  The only difference in the treatment of "managerial" and "non-managerial" employees under the Incentive Plans is the timing, nature and amount of compensation.  (Exhibit "A", p. 3).  In both instances, a manager and a non-management associate's right to incentive compensation under the Incentive Plans is based upon the sales performance in the store in which they work.  (Exhibit "A", p. 3 & 4)

Contrary to Eddie Bauer's assertion, Exhibit "A" does not refute the allegations in the FAC or establish that Plaintiffs have not sufficiently alleged a claim for violation of section 221.  Nowhere in Exhibit "A" does it provide that an employee's eligibility for an incentive payment will be affected by the cash value of returned merchandise purchased through Eddie Bauer's catalog or at a different store location.  Because compensation under the Incentive Plans is based on the sales performance of each individual store,

---

[6] Plaintiffs' reference to the provisions of Exhibit "A" should not be construed as a waiver of Plaintiffs' objections as to the admissibility of such document.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

7

reducing a store's sales performance by the dollar value of returned merchandise which was purchased from the catalogue business or other stores violates the express terms of the Incentive Plans, denies its employees wages it has offered and promised to pay, defies logic and is inherently unfair.  Because Plaintiffs' first cause of action for breach of contract alleges the "requisite breach" of the Incentive Plans by Eddie Bauer, Eddie Bauer's motion should be denied.

**B.  Eddie Bauer's Reliance on *Prachasaisoradej* is Misplaced and Eddie Bauer's Administration of the Incentive Plans Defeats Plaintiffs and the Class Members' Expectation of Incentive Compensation.**

The application of section 221 was at issue in *Prachasaisoradej v. Ralphs Grocery Company*, *Inc.*, 42 Cal.4th 217.  However, the issue that was considered by the California Supreme Court was limited as follows:

> Does an employee bonus plan based on a profit figure that is reduced by store's expenses, including the cost of workers' compensation insurance and cash and inventory losses, violate (a) Business and Professions Code section 17200, (b) Labor Code section 221, 400 through 410, or 3751, or (c) Regulation 11070?  *Id.* at 226.

After analyzing this narrow issue, the Supreme Court held:

> We conclude only that we find nothing in the statutes, regulation and cases cited by plaintiff to prohibit Ralphs from offering its employees, over and above their guaranteed base wages, supplementary incentive compensation on the basis of store profits that remain after legitimate store expenses, including the costs of workers' compensation, have been subtracted from store revenues.

It is axiomatic that an opinion is not authority for propositions that are not considered.  *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182.  For this reason and based on the analysis set forth below, it is undeniable that *Prachasaisoradej* does not stand for the proposition that Eddie Bauer's implementation and administration of its Incentive Plans, as alleged in the FAC, is not a violation of section 221 and/or the UCL.  In fact, the analysis and cases which were cited with approval by the Supreme Court in *Prachasaisoradej* establish that Eddie Bauer's motion must be denied.

**1.  The analysis in *Prachasaisoradej*.**

In *Prachasaisoradej* the Supreme Court noted that section 221 provides that, except for deductions expressly authorized by state or federal law (not applicable here), an employer may not "collect or receive

---

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

8

1  from an employee any part of wages theretofore paid by said employer to said employee". *Id.* at 226.

2  Regulation 11070 provides that "no employer shall make any deduction from the wage or require any

3  reimbursement from an employee for any cash shortage, breakage, loss of equipment, unless it can be shown

4  that the shortage, breakage, or loss is caused by dishonest or willful act, or by gross negligence of the

5  employee". *Id.* at 226.  A wage is defined by section 200 as ["any"] amount [paid] for [an employee's]

6  labor, however that amount is calculated.  "Deduction" for purposes of interpreting section 200 is defined

7  as "the act of deducting," or "[a] amount that is . . . deducted".  American Heritage Dict. (2nd College Ed.

8  1985), p. 434.  *Id.* at 228.

9      Based on the foregoing definitions, the California Supreme Court explained that an employee's

10  "wages" or "earnings" are the amount that an employer has offered or promised to pay such employee.

11  *Prachasaisoradej v. Ralphs Grocery Company, Inc.,* 42 Cal.4th at 228.  An employer takes an unlawful

12  "'deduction' or 'contribution' from an employee's 'wages' or 'earnings' when it subtracts, withholds, sets

13  off ,or requires the employee to return a portion of the *compensation* offered, promised, or paid as offered

14  or promised, so that the employee, having performed the labor, actually receives or retains less than the *paid,*

15  *offered or promised compensation,* and effectively makes a forced 'contribution' of the difference".  *Id.*

16      In *Prachasaisoradej*, the California Supreme Court addressed the application of section 221 to an

17  employee incentive plan which, unlike Eddie Bauer's Incentive Plans, was based on the **profitability** of the

18  store in which the employee worked.  In *Prachasaisoradej*, the Supreme Court noted that according to "the

19  [Ralphs] Plan's terms, it was *only* after the store had completed the relevant period of operation and the

20  resulting profit or loss figure was then derived that it was possible to determine, by a further comparison to

21  the preset targets, whether the plan participants were entitled to a supplemental incentive compensation

22  payment and if so, how much".  *Id.* at 229.  Furthermore, under the express terms of the Ralphs Plans

23  formula, the relevant profit figure was calculated by subtracting store expenses from store revenues.

24  Because the "profitability" of the store in which the plaintiffs worked was determined pursuant to this fully

25  disclosed formula, the Supreme Court concluded that Ralphs did not violate section 221.  In reaching this

26  conclusion, the Supreme Court found that no unauthorized deductions or contributions, direct or indirect,

27  from wages occurred since the threshold requirement for payment of incentive compensation, i.e. store

28

1 | profitability under the express terms of Ralphs' Plan, had not been met. *Id.* at 236.

2 | Unlike the incentive plan before the Supreme Court in *Prachasaisoradej*, Eddie Bauer's employees

3 | are entitled to incentive compensation based upon a store's gross sales pursuant to the express terms of its

4 | Incentive Plans. Eddie Bauer's business practice of deducting the dollar value of catalogue returns and return

5 | of merchandise purchased at other stores from each store's total sales is similar to the facts in *Quillian v.*

6 | *Lion Oil Company* (1979) 96 Cal.App.3d 156 which were sufficient to constitute a violation of section 221.

7 | **2. Controlling authority establishes that Eddie Bauer's business practices constitute a violation of section 221.**

8 |

9 | In *Quillian v. Lion Oil Company* (1979) 96 Cal.App.3d 156, discussed with approval in

10 | *Prachasaisoradej*, the Plaintiff managed two of Defendant's self-service gasoline stations. Her employment

11 | agreement included a provision for a manager's incentive bonus. The bonus was intended to encourage

12 | efforts to increase sales and was defined as a dollar amount based on the volume of gasoline sold at the

13 | station, less the full dollar amount of cash and merchandise shortages. Such charge backs were assessed

14 | without regard to the reason for such loss and/or the person who caused such loss. The employer argued that

15 | there were no deductions from the employee's wages because the actual amount of the wage, in the form

16 | of a bonus, was determined only after losses and shortages were applied against volume and sales figures.

17 | The Court of Appeal dismissed the employer's argument and held that to the extent cash and merchandise

18 | shortages were charged against sales, such set offs represented unlawful deductions from wages in violation

19 | of section 221. In distinguishing *Quillian* from the facts in *Prachasaisoradej*, the Supreme Court in

20 | *Prachasaisoradej* noted that unlike the facts before the *Quillian* court, no employee was offered or promised

21 | a specified bonus or commission that was based upon, or immediately measurable by, his or her sales

22 | performance. Where an incentive plan is based on, or measurable by, sales performance pursuant to its

23 | express terms, deductions made to such sales performance figures for items outside the employee's control

24 | constitutes a violation of section 221 because such deductions are nothing more than a means of covering

25 | employer costs. *Prachasaisoradej v. Ralphs Grocery Company, Inc.,* 42 Cal.4th 217 at 236.

26 | The facts in this case are also similar to the facts in *Hudgins v. Neiman Marcus Group, Inc.* (1995)

27 | 34 Cal.App. 4th 1109 which resulted in a finding that the employer violated section 221 because employers

28 |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

10

1    were assessed a pro rata share of unidentified returns (i.e., returned merchandise as to which, for whatever

2    reason, the selling employee could not be determined).  This business practice resulted in a reduction of the

3    employee's net sales and therefore earned commissions.  The Supreme Court in *Prachasaisoradej* cited this

4    case approvingly.   *Prachasaisoradej v. Ralphs Grocery Company*, *Inc.* (2007) 42 Cal.4th 217 at 233.

5         In this case, Eddie Bauer's employees have been promised and expect certain compensation.  Eddie

6    Bauer has failed to fulfill that promise by not complying with the terms of its own Incentive Plans and

7    deducting the dollar value of returned merchandise from it catalogue business and other stores from each

8    store's total sales calculation and thereby avoid paying incentive compensation that is owed to its employees.

9    This business practice is obviously beyond Eddie Bauer's employee's control, was not contemplated by the

10   express terms of the Incentive Plans, and such offsets and deductions result in the denial of the payment of

11   incentive compensation and thereby violate section 221.  Accordingly, this Court should deny Eddie Bauer's

12   motion to dismiss Plaintiffs' second cause of action.

13   **V.  PLAINTIFFS' FIFTH CAUSE OF ACTION PROPERLY PLEADS A VIOLATION OF THE
         UCL ARISING OUT OF EDDIE BAUER'S UNLAWFUL, DECEPTIVE AND UNFAIR
14       ADMINISTRATION OF ITS INCENTIVE PLANS**

15        The nature and scope of the UCL is well-established.  A practice can be prohibited as unfair or

16   deceptive even if it is not unlawful and vice versa in the context of a UCL claim.  Also, a practice is unfair

17   for the purposes of the UCL even if it is lawful if it violates the policy or spirit of the law.[7]  *Cel-Tech*

18   *Communications, Inc. v. Los Angeles Telephone Co.* (1999) 20 Cal.4th 163, 187 [this rule is self-evident

19   because its effects are comparable or the same as a violation of law, or otherwise significantly threatens or

20   harms competition].  In the recent case of *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255,

21   the court discussed the nature and scope of the UCL and stated:

22

23   _____

24        [7]The spirit of the Labor Code is to ensure the fair treatment of employees and the prompt payment of
     all wages when due.  This spirit and purpose was recognized by the Supreme Court in *Prachasaisoradej*
25   *v. Ralphs Grocery Company*, *Inc.,* 42 Cal.4th 217 which stated: "Because the laws authorizing the
     regulation of wages, hours and working conditions are remedial in nature, courts construe these
26   provisions liberally, with an eye to promoting the worker protections they were intended to provide."
     (Citation Omitted.)  *Id.* at 227; *Smith v. Superior Court (*L'Oreal USA, Inc.) (2006) 39 Cal.4th 77, 82
27   (payment of all wages when due is the public policy of the State of California).

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE
BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)

11

In *Cel-Tech, supra,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527, the California Supreme Court discussed the broad scope of the UCL and how, unlike the Unfair Practices Act, "it does not proscribe specific practices. Rather, . . . it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' [Citation.] [Fn. omitted.] Its coverage is 'sweeping, embracing' ' anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citations.] It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' [Citations.] By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes indepedently actionable. [Citations.] [¶] However, the law does more than just borrow. The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - - acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa" ' " The court further stated the Legislature intentionally made the UCL broad " 'to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " ' " (*Id.* at p. 181, 83 Cal.Rptr.2d 548, 973, P.2d 527 [" ' "When a schedule is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one" ' "].) *Id.* at p. 639-640.

In the present case, Plaintiffs have asserted a violation of all three prongs of the UCL. Paragraph 66 of the FAC provides:

EDDIE BAUER's conduct is unlawful because 1) it failed to compensate its employees for personal holidays, 2) its written Personal Holidays policy and the adoption, implementation and enforcement thereof, violates common law and statutory law, including but not limited to California Labor Code section 200, et seq., and 3) its Incentive Plan and the adoption, implementation and enforcement thereof, violates the express terms of the Incentive Plan, common law and statutory law, including but not limited to California Labor Code section 200, et seq.

Paragraph 67 of the FAC provides:

EDDIE BAUER's conduct is deceptive because its written Personal Holidays policy and written Incentive Plan and adoption, implementation, and enforcement thereof, creates the deceptive impression that it is in compliance with all applicable laws and because EDDIE BAUER deceptively refused to disclose and concealed the illegality of its conduct.

Paragraph 68 of the FAC provides:

EDDIE BAUER's conduct is unfair because it unfairly forces employees to

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

12

forfeit vested personal holidays and denies them compensation in lieu thereof and unfairly denies employees wages earned pursuant to its Incentive Plan.

The unlawful prong of the UCL is adequately pled as explained hereinabove and there is no "safe harbor" for the conduct[8] that Plaintiffs allege is unlawful. The very predicate for Plaintiffs' FAC is a violation of a particular statute, to wit, section 221.

Although Eddie Bauer does not address the two other prongs of the UCL which form the basis of Plaintiffs' fifth cause of action, the FAC sufficiently alleges violations which meet the pleading requirements of a "deceptive" and "unfair" practice under the UCL and further justify denial of Eddie Bauer's motion.

The fraud prong of the UCL only requires that members of the public are likely to be deceived. Moreover, "[t]he 'fraud' prong of [the UCL] is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived." (Citations omitted.) *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167-68.[9]

The "General Allegations" in the FAC, particularly ¶¶15-17, as well as the allegation contained in ¶67 are sufficient to satisfy this standard at this stage of the proceeding. Plaintiffs specifically allege that Eddie Bauer asserts a right to a set off/deduction that it does not possess, deceives (or at a minimum confuses) the public by such assertion into believing that such right exists and that their employees have not met the gross sales target in the Incentive Plans necessary to trigger incentive payments. Plaintiffs further assert that Eddie Bauer had an ongoing business practice of making such unlawful set offs/deductions and concealed such illegality at all times relevant to the FAC. Eddie Bauer's business practice is sufficient to constitute a deceptive practice under the UCL as alleged by Plaintiffs. *Pasterona v. Nationwide Ins.* (2003) 112 Cal.App.4th 190, 198 [failure to disclose decision to make prospective changes to its insurance

---

[8]The specific conduct of Eddie Bauer is more particularly set forth elsewhere in the complaint and referenced by these points and authorities.

[9]No authority exists that stands for the proposition that individual or actual reliance by the general public is required to maintain a UCL claim based on the fraud prong. At most, *Pfizer, Inc. v. Superior Court* (2006) 141 Cal.App.4th 290 stood for the proposition that actual reliance may be required in an advertising/labeling case. However, the California Supreme Court accepted that case for review. Therefore, that case is no longer good authority even for that proposition.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

13

1  policies until after such policies were sold "likely to confuse consumers" and Plaintiffs stated a claim for

2  fraudulent/deceptive business practice]; *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999)

3  72 Cal.App.4th 861, 888 [violation of the deceptive prong of the UCL exists when members of the public

4  are likely to be deceived].

5     Finally, the allegations in the FAC are sufficient to allege a claim pursuant to the unfair prong of the

6  UCL.  This conclusion is true under any of the formulations that presently exist for evaluating such claims.

7     Presently, there are three lines of appellate opinions addressing the definition of "unfair" within the

8  meaning of the UCL in consumer actions.  One line defines "unfair" as prohibiting conduct that is immoral,

9  unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh

10  the utility of the defendant's conduct against the gravity of the harm to the alleged victim.  *McKell v.*

11  *Washington Mutual Inc.* (2006) 142 Cal.App.4th 1457, 1473; *Smith v. State Farm Mutual Automobile Ins.*

12  *Co.* (2001) 93 Cal.App.4th 700, 718-719 and *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490,

13  1498.  A second line of cases holds that the public policy which is a predicate to a consumer unfair

14  competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory,

15  or regulatory provisions.  *Belton v. Comcast Cable Holdings, LLC* (2007) 151 Cal.App.4th 1224, 1239-40;

16  *Scripps Clinic v. Superior Court* (2003) 108 Cal.App 4th 917 and *Gregory v. Albertson's, Inc.* (2002) 104

17  Cal.App.4th 845.  A third line of cases is predicated on Section 5 of the Federal Trade Commission Act and

18  is articulated in *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394) which

19  provides:

20          *Cel-Tech* itself holds the key to the definition of "unfair" in consumer cases.
          *Cel-Tech* holds that "we may turn for guidance to the jurisprudence" arising
21          under section 5 of the Federal Trade Commission Act. (*Cel-Tech, supra,* 20
          Cal.4th at p. 185) Since 1980, the factors that define unfairness under section
22          5 are: (1) the consumer injury must be substantial; (2) the injury must not be
          outweighed by any countervailing benefits to consumers or competition; and
23          (3) it must be an injury that consumers themselves could not reasonably have
          avoided. (*Orkin Exterminating Co. v. F.T.C.* (11th Cir. 1988) 849 F.2d 1354,
24          1364.)  These factors have now been codified in title 15 United States Code
          section 45(n).  This definition of "unfair" is on its face geared to consumers
25          and is for that reason appropriate in consumer cases.  It is also suitably broad
          and is therefore in keeping with the "sweeping" nature of section 17200.  We
26          will refer to this as the "section 5 test."  *Id.* at 1403.

27

28

1    The third formula was also applied in *Dauherty v. American Honda Motor Co.* (2006) 144 Cal.App.4th 824

2    and *Brothers v. Hewlett-Packard Co.* 2007 WL 485979 (N.D. Cal.) (motion to dismiss denied - sufficient

3    facts alleged to satisfy *Camacho* three part formulation).  As a result of this confusion, many courts discuss

4    one or more of the formulations and look to see if any of the formulations were satisfied.  *Levy v. State Farm*

5    *Mut. Auto Ins. Co.* (2007) 150 Cal.App.4th 1; *Linear Technology Corp. v. Applied Materials, Inc.* (2007)

6    152 Cal.App.4th 115 and *Bardin v. Daimler Chrysler Corp.* (2006) 136 Cal.App.4th 1255.

7        These three formulations have developed because the Supreme Court has never defined "unfair" in

8    the consumer context.  In fact, the *Cel-Tech* Court specifically refused to extend its holding to consumers.

9    As evidenced by the authorities cited above there is a continuing tension in the law as to the appropriate

10    definition of "unfair" in the consumer context.  Plaintiffs submit that the weight of authority compels the

11    rejection of the strict *Cel-Tech* definition and that the limitation of that decision as articulated by the

12    California Supreme Court should be followed.  In any case, the selection of an articulation formulation is

13    not critical to this case in that the Plaintiffs satisfy any and/or all such formulations.

14        The appropriate test for unfairness must be broad to effectuate the remedial purpose of the UCL

15    because examples of possible unfair conduct is only limited by the imagination of the perpetrator.

16    *Progressive West Insurance Company v. Yolo County Superior Court* (2005) 135 Cal.App.4th 263, 286

17    (purpose of §17200 is to protect vulnerable consumers from sharp and/or nefarious business practices).  A

18    list of such examples was recited in *Bardin v. DaimlerChrysler Corp., supra*, which states:

19        The *Smith* court further stated, " '[e]xamples of unfair business practices
         include: charging a higher than normal rate for copies of deposition
20        transcripts (by a group of certified shorthand reporters), where the party
         receiving the original is being given an undisclosed discount as the result of
21        an exclusive volume-discount contract with two insurance companies
         [citation]; placing unlawful or unenforceable terms in form contracts
22        [citations]; asserting a contractual right one does not have [citations];
         systematically breaching a form contract affecting many consumers [citation],
23        or many producers [citation]; and imposing contract terms that make the
         debtor pay the collection costs [citation].' " (*Smith, supra,* 93 Cal.App.4th at
24        p. 719, 113 Cal.Rptr.2d 399).  *Bardin v. DaimlerChrysler Corp., supra*, 136
         Cal.App.4th at 1269.

25        In the present case, Plaintiffs allege that Eddie Bauer's assertion of a right to a set off/deduction

26    which it does not possess, is a contractual violation, violates section 221 and is unfair.  The unfair nature

27

28

of Eddie Bauer's conduct is indisputable when juxtaposed with the policy and purpose of section 221 and the UCL.

In conclusion, "unfairness" is an equitable concept that cannot be mechanically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer. *Progressive West Insurance Company v. Yolo County Superior Court* (2005) 135 Cal.App.4th at 287. In addition, what constitutes unfair competition or unfair or fraudulent business practices under any given circumstances is a question of fact. *Schnall v. Hertz Corp.*, *supra,* 78 Cal.App.4th at 1167. Equity and the allegations in the FAC compel the conclusion that this Court should deny Eddie Bauer's motion to dismiss Plaintiffs' fifth cause of action.

## VI. PLAINTIFFS POSSESS STANDING TO ASSERT THE ALLEGED CLAIMS

In ¶¶21 & 25 of the FAC, Plaintiffs allege that they were full-time Eddie Bauer employees and in ¶¶22, 23, 26 & 27, Plaintiffs allege that they were denied compensation as a result of their forfeiture of vested personal holidays pursuant to Eddie Bauer's unlawful Personal Holidays policy. In its memorandum of points and authorities, Eddie Bauer attempts to fabricate an argument that Ochoco was not a full-time employee based on Exhibits "B" and "C" attached to the Declaration of Kalia C. Petmecky. Pages four (4) and five (5) of Exhibit "B" sets forth Eddie Bauer's Personal Holidays policy and pages two (2) and three (3) of Exhibit "C" set forth the different classifications of employees employed by Eddie Bauer in California. Neither Exhibits "B" and "C" refer or relate in any way to Ochoco's employment status or job classification while she was employed at Eddie Bauer, the allegations contained in the FAC that allege she was a full-time employee entitled to personal holiday benefits, and/or that she suffered damages as a result of her forfeiture of such vested benefits pursuant to Eddie Bauer's unlawful Personal Holidays policy.

Eddie Bauer also tries to support its arguments with the statements contained on page thirteen (13) of Eddie Bauer's memorandum of points and authorities. The statements are:

1.     "Eddie Bauer's records show that Ochoco was a part-time *limited* associate, and as such not eligible for holiday pay" (pg. 13, ln. 4-5);

2.     Ochoco was hired as a limited part-time employee in accordance with the company's Procedures (pg. 13, ln. 11-12);

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

16

1     3.    Eddie Bauer's records show that she [Ochoco] was not scheduled to work an average of 20

2    hours or more per week for two or more consecutive complete quarters . . . . (pg. 13, ln. 12-13);

3     4.    Eddie Bauer's Personal Holiday Policy expressly states that it does not apply to "part-time

4    limited associates", which include employees, such as Ochoco (pg. 13, ln. 15-16);

5     5.    Ochoco's part-time limited employment status excludes her from the Personal Holiday Policy

6    (pg. 13, ln. 17-18); and

7     6.    Ochoco was neither allocated any personal holidays at the beginning of her employment with

8    Eddie Bauer, nor did she take any during any time  (pg. 13, ln. 18-19).

9    These statements should be disregarded by this Court because they do not have any evidentiary support.

10    Absent such evidentiary support and to the extent such contentions are in dispute, the Court must assume

11    the truth of all properly pled material allegations of the FAC, to wit, that Ochoco was a full-time employee

12    entitled to personal holidays pursuant to Eddie Bauer's Personal Holiday policy.  *International Audio-text*

13    *network, Inc. v. AT&T Co.* (2nd Cir. 1995) 62 F.3d 69, 72 (any ambiguity must be resolved in plaintiff's favor

14    at the pleading stage).  Accordingly, this Court should reject Eddie Bauer's argument that Ochoco lacks

15    standing.

16    Eddie Bauer's claim that Scherer lacks standing because Scherer was employed as a manager also

17    lacks merit.  For the purposes of the claims alleged in the FAC, Scherer is not rendered atypical as a result

18    of her employment as a manager by Eddie Bauer.  Scherer satisfies the typicality prerequisite of Federal Rule

19    of Civil Procedure, Rule 23(a).  Specifically, the test for typicality is "whether other members have the same

20    or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

21    whether other class members have been injured by the same course of conduct."  *Hanlon v. Dataproducts*

22    *Corp.* (9th Cir. 1992) 976 F.2d 497, 508 (quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal. 1985);

23    *Sav-On Drug Stores, Inc. v. Superior Court* (Rocher) (2004) 34 Cal.4th 319, 332-335 and 340 (class

24    representatives' claims are typical when such claims emanate from the same unlawful, unfair and/or

25    deceptive conduct and the existence of separate job classifications for the need to ultimately prove

26    individualized damages does not defeat such typicality).  The FAC alleges that Scherer's claims and those

27    of the putative class members are identical and arise out of Eddie Bauer's common course of conduct.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE
BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)

17

1    (FAC, ¶¶29, 30, and 34) Eddie Bauer's claim that Scherer lacks standing is groundless and should be

2    dismissed by this Court.

3                                         **VII. CONCLUSION**

4           For the reasons stated herein, Eddie Bauer's partial motion to dismiss should be denied in its entirety.

5    Alternatively, if this Court grants Eddie Bauer's motion in whole or part, Plaintiffs respectfully request that

6    leave be granted to file a second amended complaint.

7    Dated:  February 26, 2008                     LAW OFFICES OF SHELDON A. OSTROFF

8

9                                                   s/Sheldon A. Ostroff

10   _____           Attorneys for Plaintiffs
                                                    E-mail: sostrofflaw@aol.com
11

12   Dated: February 26, 2008                       HUFFMAN & KOSTAS

13

14                                                   s/James C. Kostas
     _____           Attorneys for Plaintiffs
15                                                  E-mail: jkostas@aol.com

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT EDDIE
BAUER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)

18