| | |
|---|---|
| 1 | LAURA M. FRANZE (SBN 250316) |
|   | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| 2 | 1700 Pacific Avenue, Suite 4100 |
|   | Dallas, Texas 75201 |
| 3 | Telephone:    214.969.2800 |
|   | Facsimile:     214.969.4343 |
| 4 | E-mail:          lfranze@akingump.com |
| 5 | KALIA C. PETMECKY (SBN 194094) |
|   | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| 6 | 2029 Century Park East, Suite 2400 |
|   | Los Angeles, California 90067-3012 |
| 7 | Telephone:    310-229-1000 |
|   | Facsimile:     310-229-1001 |
| 8 | E-mail:          kpetmecky@akingump.com |
| 9 | Attorneys for Defendants |
|   | EDDIE BAUER, INC. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTAL D. SCHERER, an individual, on behalf of herself individually, all others similarly situated, and on behalf of the general pubic, | Case No.  07-CV-2270-JM-AJB |
| | [Assigned to the Honorable Jeffrey T. Miller] |
| Plaintiffs, | **DEFENDANT EDDIE BAUER, INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)** |
| v. | |
| EDDIE BAUER, INC., a Delaware corporation; and DOES 1 through 100, inclusive, | |
| | Date:           March 14, 2008 |
| Defendants. | Time:           1:30 p.m. |
| | Courtroom:  16 |
| | Date Action Filed:  Sept. 20, 2007 |
| | Date Action Removed:  Dec. 3, 2007 |

6213273                                                                                                07-CV-02270-JM-AJB

DEFENDANT EDDIE BAUER, INC.'S REPLY BRIEF IN SUPPORT OF ITS
PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

# TABLE OF CONTENTS

Page

I. *RALPHS* IS DISPOSITIVE HERE AND MANDATES A DISMISSAL OF PLAINTIFFS' SECTION 221 CLAIM. ...................................1

   A. *Ralphs* is Directly Applicable. ........................................................................1

   B. The Supreme Court has Already Distinguished and Rejected Application of the Appellate Cases Upon Which Plaintiffs Rely. .........................4

II. PLAINTIFFS CONTINUE TO FAIL TO ALLEGE ANY PROVISION OF THE INCENTIVE PROGRAM THAT HAS ALLEGEDLY BEEN BREACHED. ..............................................................7

III. PLAINTIFFS' SECTION 17200 WHICH IS PREDICATED ON THE ALLEGED VIOLATION OF SECTION 221 FAILS AS A MATTER OF LAW..............................................................................................8

IV. BOTH PLAINTIFFS SCHERER AND OCHOCO LACK STANDING TO SEEK RELIEF FOR *NON-MANAGEMENT* EMPLOYEES WHO WERE ELIGIBLE FOR PERSONAL HOLIDAY PAY UNDER DEFENDANT'S PERSONAL HOLIDAY POLICY BECAUSE NEITHER WAS EVER A MEMBER OF THAT PURPORTED CLASS. .......................................................10

V. CONCLUSION...............................................................................................11

6213273                                            i

DEFENDANT EDDIE BAUER, INC.'S REPLY BRIEF IN SUPPORT OF ITS
PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir.1994)..................................................................................9

*Louis v, McCormick & Schmick Restaurant Corp.*,
  460 F. Supp. 2d 1153 (C.D. Cal. 2006) .............................................................8

*Parrino v. FHP, Inc.,*
  146 F.3d 699 (9th Cir.1998).................................................................................9

*Parrish v. National Football League Player's Ass'n*,
  WL 2601385 (N.D. Cal. 2007) ............................................................................6

*White v. Starbucks Corp.*,
  497 F. Supp. 2d 1080 (N.D. Cal. 2007) ..............................................................8

## STATE CASES

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tele. Co.*,
  20 Cal.4th 163 (1999) ..........................................................................................8

*Cortez v. Purolator Air Filtration Products Co.*,
  23 Cal.4th 163 (2000) ..........................................................................................9

*Dauherty v. Am. Honda Motor Co.*,
  144 Cal. App.4th 824 (2006) ...............................................................................8

*Hudgins v. Neiman Marcus Group, Inc.*,
  34 Cal. App. 4th 1109 (1995) .....................................................................4, 5, 6

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 C.4th 1134 (2003) ...........................................................................................9

*Oceanside 84, Ltd. v. Fidelity Fed. Bank,*
  65 Cal. App. 45h 1441 (1997)..............................................................................7

*Pastoria v. Nationwide Ins. Co.*,
  112 Cal. App.4th 1490 (2003) .............................................................................9

*Payne v. United California Bank*,
   23 Cal. App.3d 850 (1972)..........................................................................................9

*Prachasaisordej v. Ralphs Grocery Co., Inc.*,
   42 Cal.4th 217 (2007) .........................................................................................passim

*Quillian v. Lion Oil Co.*,
   96 Cal. App. 3d 156 (1979)..................................................................................4, 5, 6

*Steinhebel v. Los Angeles Times Comm.*,
   126 Cal. App. 4th 696 (2005) .....................................................................................8

*Violante v. Communities Southwest Dev. and Const. Co.*,
   138 Cal. App.4th 972 (2006) ......................................................................................8

## STATUTES

California Business and Professions Code § 17200 ......................................................8, 10

California Labor Code § 351 ...................................................................................................8

California Labor Code Section 221 ...............................................................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Eddie Bauer, Inc. ("Eddie Bauer") submits the following Reply in support of its Partial Motion to Dismiss filed on February 11, 2008.

**I.    *RALPHS* IS DISPOSITIVE HERE AND MANDATES A DISMISSAL OF PLAINTIFFS' SECTION 221 CLAIM.**

As explained in detail in Eddie Bauer's Motion to Dismiss, the California Supreme Court's recent decision in *Prachasaisordej v. Ralphs Grocery Co., Inc.*, 42 Cal.4th 217 (2007), compels a dismissal of Plaintiffs' Section 221 claim as a matter of law.  In *Ralphs,* the Court held that an employee bonus incentive plan, like the one at issue here, "designed to reward employees beyond their normal pay for their collective contribution" to the store did not violate Section 221.  *Id.* at 244. Plaintiffs' efforts to distinguish *Ralphs* fail.

**A.    *Ralphs* is Directly Applicable.**

Plaintiffs argue that Eddie Bauer's profit sharing plan is distinguished from the one discussed in *Ralphs* because it is based on "gross sales" rather than "profits."  (Opp. at 9:16-18, and 10:2-6). Plaintiffs' legal reasoning is flawed and their arguments fail as a matter of law.[1]  It simply does not matter whether the incentive pay plan measures or rewards "sales" or "profits."  What matters is that the plan is a bona fide incentive plan based on store performance (and store employees' collective efforts), and is not a straight individual sales commission plan.

Case law cited by Plaintiffs concerning individually earned sales commissions has no application here.  Incentive pay under the Eddie Bauer Program is neither individually earned, nor is it

---

[1] While the court need not determine any factual issues in order to decide this motion, Plaintiffs are also wrong as a matter of fact. Plaintiffs do not point to any language in Eddie Bauer's Incentive Program that states that incentive compensation is based solely on "gross sales." To the contrary, it is clear, based on Plaintiffs' own pleadings and arguments, that the Eddie Bauer Incentive Plan is not based on a simple gross sales calculation.  Plaintiffs acknowledge that Eddie Bauer sets, in its own discretion, the threshold for incentive pay.  Eddie Bauer does not pay any incentive premium until a certain pre-set store revenue number is reached. Under the policy at issue, Eddie Bauer is free to (and does) consider a multitude of factors in setting the target, including expenses and directly or indirectly, projected profits.  It is unclear why Eddie Bauer has any obligation to "show its work" in setting these target levels.  In addition, Plaintiffs are incorrect in asserting that Eddie Bauer bases incentive pay on "gross sales."  Instead, Eddie Bauer measures "target" in terms of net monthly cash register sales, a fact which Plaintiffs implicitly acknowledge by their complaint that sales are net of cash merchandise returns to the store.

6213273                                              1

properly characterized as a commission. As Plaintiffs' pleadings concede (and the written plan document establishes), an employee's incentive pay is not calculated based on his individual sales numbers. Instead, incentive pay is calculated based on a variable "predetermined sales target" compared to actual store performance, as measured on a monthly basis. This variable sales target is referred to in the written Incentive Program (placed at issue here by Plaintiff) as the "Plan." (SAC, ¶¶ 10 and 40; Exhibit A.). Plaintiffs do not contest, nor do they challenge, the fact that Eddie Bauer set and adjusted the Plan target in its sole discretion.[2] Plaintiffs also concede that store employees received no incentive pay under the Program unless their store exceeded Plan for the month. As the Supreme Court has recognized, there is no inherent violation of law in setting prerequisites to the receipt of incentive pay. *Ralphs, supra,* at 239. The Court rejected the same California Labor Code Section 221 challenge asserted by Plaintiffs here. The Court expressly upheld an incentive pay plan, calculated, as here, on a periodic basis, and where wages due could not be determined until "after specified contingencies have come to pass." *Id*. The *Ralphs* decision clearly establishes that an employer incentive plan may be contingent on certain pre-set goals (whether within control of employees or not), and that incentive pay may be calculated in such a way that that employer costs or expenses off-set sales (thereby reducing pay awarded) even when such expenses are beyond the control or influence of employees' collectively.[3]

*Second,* if as Plaintiffs admit, a bonus plan may be based on some formulation of "profits," there is no logical reason that it can't be based on a surrogate for or component of profits, including *net cash register sales*. Plaintiffs' arguments to the contrary fall short of the mark in view of the principle, inherent in the *Ralphs* decision, that an employer is free to design reasonable supplemental pay formulas and, in doing so, may use any good faith definition for "sales," "profits," "expenses," or

---

[2] It is also not contested that in actual practice, Eddie Bauer considered historical performance and net sales (which included a consideration of cash refunds for merchandise returned to the store regardless of the origins of such merchandise.)

[3] As previously explained, Eddie Bauer sets the incentive formula in a way that accounts for and neutralizes the impact of catalog returns by setting the sales thresholds based on both historical sales and historical returns (including catalog returns). Interestingly, Plaintiffs do not challenge Eddie Bauer's discretion in setting the incentive threshold for each store or the company's freedom to adjust that threshold at any time. In light of this fact, Plaintiffs' position is virtually nonsensical.

"costs." *Id.* at 241. Thus, whether the Eddie Bauer Incentive Program is articulated as based on net store register sales (as Defendant has shown) or gross store register sales minus cash returns at the store (as Plaintiffs assert) is mere word play and of no legal consequence.

Furthermore, it would be irrational to suggest, as Plaintiffs do here, that an employer is free, under *Ralphs*, to base an incentive plan on store profits – generally defined as net sales minus certain overhead and operating expenses – but is NOT free to base its incentive pay formula on net sales alone. Plaintiffs apparently fail to see any irony in the fact that the employer in *Ralphs* was embroiled in a multi-year litigation odyssey because it expressly *included* expenses said to be beyond the employees' control in the design of its incentive pay formula. Eddie Bauer meanwhile is subject to the same fate because it has *failed* to expressly include some of these same expenses in its formula for calculation of incentive pay. The Court's refusal to invalidate the *Ralphs* plan *because* such expenses *were* deducted, does not reasonably lead to the conclusion that such deductions are *required*. Under *Ralph*s, there is no reason to believe that a plan based on revenues (based on gross or net sales), is any less valid than a plan based on revenues net of expenses. Indeed, *Ralphs* clearly endorses any reasonable plan that rewards employees based on "overall *business* performance" no matter how the employer chooses to measure that performance. *Id.* at 239 (emphasis added). The Court seemed to be warning against just the type of hyper-technical challenge at issue here when it admonished that "*nothing in the wage-protection laws, or the policies they promote, [] requires such meaningless figure-juggling.*" *Id.* at 241-42 (emphasis added). Allowing Plaintiffs to challenge Eddie Bauer's voluntary incentive program based on the hyper technical distinctions to *Ralphs* asserted here would ill serve employees or the public's interest, and would serve to discourage employer's from instituting such plans. *See id.* at 229, 241-42.

It is also worthy of note that Plaintiffs' premise – that the Eddie Bauer Incentive Program is based on sales, rather than profits – is incorrect. As previously explained, Eddie Bauer's Incentive Program allows (and the company does) consider store expenses in setting its target numbers. These target numbers are set to coincide with a certain level of profitability. Making incentive payments to employees collectively, in the absence of actual store profitability, would not be irrational and no company could indefinitely maintain such a program. Plaintiffs do not explain why expenses must be

6213273

3

expressly calculated, rather than accounted for in the setting of the target goal number that in turn triggers incentive pay.

Eddie Bauer's Incentive Program, like the incentive program in *Ralphs,* does not violate Section 221.

**B.   The Supreme Court has Already Distinguished and Rejected Application of the Appellate Cases Upon Which Plaintiffs Rely.**

Ignoring the Supreme Court's lengthy discussion expressly distinguishing *Quillian v. Lion Oil Co.,* 96 Cal. App. 3d 156 (1979) and *Hudgins v. Neiman Marcus Group, Inc.,* 34 Cal. App. 4th 1109 (1995), as well as the Court's conclusion that "a holding that those decisions govern here would defy reason and common sense[,]" Plaintiffs assert that these cases are "controlling."  (Opp. at 11-12).

As previously explained (*see* Motion, at fn.3), however, *Ralphs* Court distinguished incentive programs based on store (or collective) performance from individual-based sales commissions. *Quillian* and *Hudgins* involved traditional straight commission payments based on an employee's *individual* sales efforts.  In both cases, employees were "offered or promised a specified bonus or commission that was based upon, and immediately measurable by, his or her individual sales or managerial efforts, but was then subject to deductions to cover employer costs."  *Ralphs Grocery*, at 236.  In contrast, in *Ralphs*, as here, "[t]he supplementary incentive compensation promised or offered under the Plan [in Ralphs] was collective in nature, intended to promote and reward teamwork that produced a net profit for the store as a whole.  This necessarily entailed not only increasing the store's overall sales, but reducing its overall costs . . ." *Ralphs Grocery,* at 237.  The Supreme Court concluded that discouraging "such a supplementary incentive compensation system beneficial to both employer and employees contravenes the wage-protection policies of the Labor Code and Regulation 11070." *Id.* at 237.

Specifically, in *Quillian*, the plaintiff managed two of defendant's self-service gasoline stations. Plaintiff's employment agreement included a provision for a manager's incentive bonus in addition to her modest base pay.  The bonus, intended to encourage managerial efforts to reduce sales and reduce losses, was defined as a dollar based on the volume of gasoline sold at the stations, plus a flat 1 percent of the station's non-gasoline sales, less the full dollar amount of cash and merchandise shortages at the

stations. As characterized by the Supreme Court in *Ralphs*, "the *full amount* of the stations' cash and merchandise shortages, however and by whomever caused, were subtracted *dollar for dollar* to arrive at this single employee's final bonus. Thus, against a *percentage* of the stations' sales revenues, she alone shouldered the entire burden of their losses and shortages to the extent of the bonus otherwise payable." *Ralphs,* at 232 n.7 (emphasis in original). The *Quillian* court found this to be a violation of Section 221 because it was a reduction of a promised bonus by shortages applicable to the stations under the employer's supervision, making the employee an insurer of the employer's merchandise in violation of the employee bond laws. *See Quillian*, *supra,* at 163.

Likewise, in *Hudgins*, sales associates of a department store chain were paid commissions on their *individual* net sales. Sales associates received advances, or draws, against commissions subject to charge backs against future draws if actual commissions, as finally determined, fell short of the amounts previously advanced. The employer began charging back against each associate's earned commissions on his or her own net sales, a pro rata share of advance commissions deemed to have been paid on "unidentified" returns – *i.e.,* returns as to which, for whatever reason, the selling employee could not be determined. The Court found this policy to violate Section 221 because the deduction was not just one step in the calculation of the commission. Rather, "employees [were made] the insurers of the employer's business losses" and were subjected to unpredictable deductions from their wages for losses due to factors beyond their control. *Hudgins*, *supra*, at 1123.

In distinguishing both *Quillian* and *Hudgins*, the Supreme Court explained that

> [i]n each of those cases, the employee's compensation, whether regular or supplementary, was set, in essence, as a sales commission., i.e., a specified and promised share of the revenues attributable to that employee's personal sales or managerial efforts. The set commission was then directly reduced by the full dollar value of merchandise and cash losses, as determined by the employer, and regardless of employee fault. The employer thus defrayed its merchandise and cash losses by charging them, dollar for dollar, against its liability for wages.

*Ralphs,* at 236.

Unlike the facts in *Quillian and Hudgins,* the Supreme Court held that in *Ralphs*

> no employee was offered or promised a specified bonus or commission that was based upon, and immediately measured by, his or her individual sales or managerial efforts, but was then subject to deductions to cover

6213273

5

> employer costs. Instead under the [Ralphs incentive plan], all eligible employees' supplementary incentive compensation was equally and collectively premised, at the outset, on *store profits,* a factor that necessarily considers the employer's expenses as well as its income. Employees understood from the beginning that, by the Plan's very nature, supplementary incentive compensation for a particular period depended on the extent to which the store's revenues for the relevant period exceeded its operating expenses, as defined in the Plan. Amounts calculated as a percentage of the store's Plan-defined profit were the only "wages" or "earnings" offered or promised to eligible employees under the Plan . . . If there was uncertainty in the amount ultimately due, it arose, not from employer charge backs taken *after* the basic Plan wage was determined, but inherently from the basis on which the plan compensation was awarded.

*Ralphs, supra,* at 236-237.

Here, unlike *Qullian* and *Hudgins*, Eddie Bauer's Incentive Plan does not entitle employees to a commission based on any *individual's* net sales. Instead, incentive compensation for Eddie Bauer employees, including Plaintiffs, is based on *total* store earnings arising from the collective efforts of all store employees. As the Court held in *Ralphs*, an incentive plan that, like here, is "designed to reward employees beyond their normal pay for their collective contribution to store profits" does not violate Section 221. *Ralphs*, 42 Cal. 4th at 244. Plaintiffs' misplaced reliance on *Quillian and Hudgins* does not change that.

## II. PLAINTIFFS CONTINUE TO FAIL TO ALLEGE ANY PROVISION OF THE INCENTIVE PROGRAM THAT HAS ALLEGEDLY BEEN BREACHED.

As explained in Eddie Bauer's moving papers, to survive a motion to dismiss, the plaintiff must identify *the specific provision of* the contract that was allegedly breached. *Parrish v. National Football League Player's Ass'n*, No. C07-00943, WL 2601385, *12 (N.D. Cal. 2007) (granting motion to dismiss because plaintiff "failed to plead what provision defendants breached"). Here, Plaintiffs have not, and cannot, do so. Thus, their breach of contract claim must be dismissed.

Instead, in their Opposition, Plaintiffs point to the following text from the Incentive Program and, inexplicably, claim that Eddie Bauer's Incentive Program provides that "performance is measured solely by the [store's] gross sales:" "Store must achieve a full 1% over Plan to start earning incremental

incentive for every dollar over Plan' and "You will be eligible for incentive when your store achieves or beats Plan.

(Opp. at 7:12-14). Neither the quoted text nor any other portion of Eddie Bauer's Incentive Program, suggests that Eddie Bauer's calculations of a store's sales to determine whether the store "achieved or beat Plan" is limited to the "gross sales" of each store.[4] Without a showing that Eddie Bauer had a contractual obligation to limit its incentive pay calculations "exclusively" to the "gross sales" of each store, Plaintiffs cannot show that Eddie Bauer breached that phantom obligation by taking into account returns. Indeed, Plaintiffs not only fail to identify a breach, but they also concede that Eddie Bauer acted *in accordance* with the terms of its policies. In its Second Amended Complaint, Plaintiffs admit that the incentive payment was contingent on meeting "a predetermined target," which is referenced in the Incentive Program as "Plan." (SAC, ¶¶ 10 and 40; Exhibit A.) Plaintiffs further concede that Eddie Bauer had a "uniform policy that *permitted* any item purchased at any store or through its catalogue business to be returned to any store . . . and the value of such returned item was deducted from the computation of the sales generated by that store. . . " (SAC, ¶ 42). Plaintiffs further concede that Eddie Bauer acted in accordance with this policy. Plaintiffs fail to identify, however, any provision of the Incentive Program that promises not to take into account returns when calculating the predetermined targets. Without identifying a contractual obligation that has allegedly been breached, Plaintiffs' breach of contract claim must fail as a matter of law.

---

[4] Even if Plaintiffs argued that the Incentive Program was vague, which they do not, Plaintiffs cannot object to Eddie Bauer's interpretation of the Incentive Program because Plaintiffs have already conceded that Eddie Bauer has calculated returns as part of sales "at all times relevant hereto." SAC ¶ 42. It is well settled, that the subsequent conduct of the parties is considered in determining the parties' intent. *See Oceanside 84, Ltd. v. Fidelity Fed. Bank,* 65 Cal. App. 45h 1441, 1449 (1997) (finding that a borrower acquiesced in Bank's interpretation of agreement when it made payments for five years without objecting to Bank's method of calculating interest.) Accordingly, here, Plaintiffs' express allegations that Eddie Bauer has always calculated returns as part of sales for purposes of determining whether a store meets Plan, forecloses any after-the-fact argument that Eddie Bauer intended that a store's "gross sales" would be the benchmark.

### III. PLAINTIFFS' SECTION 17200 WHICH IS PREDICATED ON THE ALLEGED VIOLATION OF SECTION 221 FAILS AS A MATTER OF LAW.

It is black-letter law that, when a Labor Code claim for unpaid wages fails, the unfair competition claim predicated on the failed Labor Code claim, must also fail as a matter of law. *Violante v. Communities Southwest Dev. and Const. Co.*, 138 Cal. App.4th 972, 980 (2006) ("In the absence of a valid claim for violation of the prevailing wages law, plaintiffs also cannot successfully allege unfair business practices or unfair competition under the Business and Professions Code."); *Steinhebel v. Los Angeles Times Comm.*, 126 Cal. App. 4th 696, 712 (2005) ("where, as here, an employer's policy is lawful and permissible, there is no basis for relief under the unfair competition law"). *See also White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007) (summary judgment granted on UCL claim where derivative Labor Code claim dismissed); *Louis v, McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1164 (C.D. Cal. 2006) (UCL claim whose viability was based on claim under Labor Code § 351 was dismissed after the court found no violation of Labor Code). Plaintiffs make no effort, because they cannot, to debunk this basic legal proposition.

Instead, in their Opposition, Plaintiffs spend five pages setting forth the three prongs upon which a UCL violation may be based. Plaintiffs argue that they may assert a UCL claim by pleading that Defendant's Incentive Program is either unlawful, deceptive, or unfair. (Opp. at 11.) Therefore, even if Eddie Bauer establishes that its Incentive Program is lawful under Section 221 of the Labor Code, which Eddie Bauer has done here, Plaintiffs argue that, their UCL claim may still survive under the deceptive and/or unfair prong. (Opp. at 12-13.) In support of their position, Plaintiffs cite to a litany of irrelevant cases, none of which involves a predicate claim based on an alleged violation of a Labor Code provision or failure to pay employee wages. Plaintiffs' lack of authority that a claim for wages that is deemed to be lawful under the Labor Code can somehow still be unfair or deceptive and, therefore, warrant an award of said wages, is telling. Plaintiffs' cited cases are inapposite. They all arise out of various consumer protection claims, breach of health insurance contracts, breach of warranty claims, and other non-labor claims. *See e.g.*, *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal.4th 163 (1999) (alleging that defendant cellular phone company sold phones below cost to attract customers); *Dauherty v. Am. Honda Motor Co.*, 144 Cal. App.4th 824 (2006)

6213273

8

DEFENDANT EDDIE BAUER, INC.'S REPLY BRIEF IN SUPPORT OF ITS
PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)

(alleging that defendant breached its express warranty by not disclosing engine defect); *Pastoria v. Nationwide Ins. Co.*, 112 Cal. App.4th 1490 (2003) (alleging that defendant failed to disclose material changes to health insurance policies prior to plaintiff's purchase of policy).

Precluding Plaintiffs from raising a UCL claim under the "deceptive" or "unfair" prongs when the Incentive Programs are found to be lawful, is entirely consistent with the available remedies under the UCL statute. In the context of a UCL claim based on alleged failure to pay wages, such as here, "orders for payment of wages unlawfully withheld from an employee are . . . a restitutionary remedy authorized by section 17203." *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 173, 177 (2000). However, damages and non-restitutionary disgorgement are not available remedies under the UCL. *Id.* at 173; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 C.4th 1134, 1151-52 (2003). Here, if the Incentive Program is deemed lawful, as it should, Plaintiffs will not be able to argue that they are somehow entitled to those same wages under any other prong of the UCL as they are not entitled to any form of non-restitutionary damages under the UCL.

### IV. BOTH PLAINTIFFS SCHERER AND OCHOCO LACK STANDING TO SEEK RELIEF FOR *NON-MANAGEMENT* EMPLOYEES WHO WERE ELIGIBLE FOR PERSONAL HOLIDAY PAY UNDER DEFENDANT'S PERSONAL HOLIDAY POLICY BECAUSE NEITHER WAS EVER A MEMBER OF THAT PURPORTED CLASS.

Plaintiffs do not dispute that a plaintiff "cannot give himself standing to sue by purporting to represent a class of which he is not a member." *See e.g., Payne v. United California Bank*, 23 Cal. App.3d 850, 859-60 (1972). Instead, Plaintiffs urge the Court to disregard the overwhelming evidence showing that they are *not* a member of the class they seek to represent. It is settled, however, that when ruling on a motion to dismiss, the Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir.1994). In addition, the Court may consider "documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint." *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir.1998). These rules prevent a plaintiff from surviving a motion to dismiss simply by pleading around crucial documents. *See id.*

Here, Plaintiff Ochoco fails to show that the Personal Holiday Policy ever applied to her personally or that she qualified for Holiday pay under such policy. (SAC *generally)*. To the contrary,

Eddie Bauer's Associate Classification Procedures (which the Court may consider as the Second Amended Complaint puts its contents at issue) state that generally "nonexempt new hires" like Ochoco, "must be hired into the Part-Time *Limited* classification." (Exhs. B and C) (emphasis added). Further, Eddie Bauer's Personal Holiday Policy expressly excludes "part-time *limited* associates" such as Ochoco. *Id.* Indeed, the Second Amended Complaint does not dispute (because it cannot) that Ochoco was either allocated any personal holidays at the beginning of her employment with Eddie Bauer, or that she took any during any time. Under these circumstances, Plaintiff Ochoco lacks standing, as a matter of law, to assert any claims on behalf of others under the Personal Holiday Policy. Similarly, Plaintiff Scherer fails to assert that she ever worked for Eddie Bauer in a non-management capacity. (SAC generally and ¶ 21). Thus, Scherer lacks standing to assert any claims on behalf of non-management employees under the Personal Holiday Policy.

## V. CONCLUSION

As set forth in Eddie Bauer's moving papers and in this Reply, Plaintiffs' First Cause of Action for Breach of Contract, Second Cause of Action for an alleged violation of Labor Code Section 221, and Fifth Cause of Action for alleged violations of Business and Professions Code § 17200, fail to state a claim upon which relief can be granted. Accordingly, Defendant's Partial Motion to Dismiss should be granted.

Dated: March 7, 2008                     s/Kalia C. Petmecky
                                         Kalia C. Petmecky
                                         Attorney for Defendants
                                         E-mail: kpetmecky@akingump.com

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, California 90067. On March 7, 2008, I served the foregoing document(s) described as: **DEFENDANT EDDIE BAUER, INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)** on the interested party(ies) below, using the following means:

| | |
|---|---|
| Sheldon A. Ostroff, APC<br>Law Offices of Sheldon A. Ostroff<br>1441 State Street<br>San Diego, California 92101<br>Telephone:   619.544.0881<br><br>*Attorneys for Kristal D. Scherer* | James C. Kostas, APC<br>David Huffman, APC<br>Huffman & Kostas<br>A Partnership of Professional Corporations<br>1441 State Street<br>San Diego, California 92101<br>Telephone:   619.544.0880<br><br>*Attorneys for Kristal D. Scherer* |

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 7, 2008 at Los Angeles, California.

Kalia C. Petmecky                                        s/Kalia C. Petmecky
[Print Name of Person Executing Proof]          [Signature]